**STATE of Missouri, Respondent,**

v.

**Stanley J. STODULSKI, Appellant.**

No. 45341.

Supreme Court of Missouri,

Division No. 1.

Feb. 11, 1957.

Cecil Block, St. Louis, for appellant,

John M. Dalton, Atty. Gen., W. Don Kennedy, Asst. Atty. Gen., for respondent.

COIL, Commissioner.

This is an appeal from an order denying petitioner-defendant relief after a' hearing on an application for a writ of error coram nobis.

Appellant (applicant-defendant below) filed in Division 10 of the Circuit Court of the City of St. Louis, an "Application for Writ of Error Coram Nobis." He averred therein: that on October 5, 1942, he, then 17 years old, in custody and without counsel, without being advised of his right to counsel, without means to engage counsel, and without understanding that he was charged with a felony, pled guilty to larceny of a motor vehicle as charged in an information theretofore filed and was sentenced to three months in the city workhouse; that the court records do not disclose that he was advised of his right to' counsel or that he had counsel, or that he was aware of the seriousness of the charge; that he would have accepted the assistance of counsel; that he was a first offender and had little education; that if he had had counsel he in "all probability" would not have pled guilty; that the facts alleged disclose that he was denied due process of law in violation of the constitutions of Missouri and the United States, and therefore the judgment of conviction and the pursuant sentence were void and should be set aside. Defendant prayed for a hearing and that an order issue to the warden of the Missouri penitentiary to produce him for such hearing.

Apparently such an order was issued or at least petitioner was present at the hearing on his application and testified that he was then confined in the penitentiary by reason of a conviction on another charge and had been sentenced under the Habitual

Criminal Act, Section 556.280 RSMo 1949, V.A.M.S. by reason of a jury having found that he had priorly been convicted of the felony to which he had pled guilty on October 5, 1942. He also testified that he had fully served the three-months' workhouse sentence imposed as a result of his guilty plea.

■ As noted, the application in the instant case was denominated an application for writ of error coram nobis. If the application were one which is contemplated by the terms of Supreme Court Rule 27.26, 42 V.A.M.S. or were one which we could consider as an application for a writ of habeas corpus, we should so do without further discussion. That is because "The motion filed by defendant is not to be determined by the name given it, but rather upon the facts alleged and the relief sought. If the facts alleged and the relief sought entitle him to consideration of his motion on its merits, then it is reasonable and just that it be so considered, despite nomenclature." State v. Eaton, Mo.Sup., 280 S.W.2d 63, 65 [1]. It is clear, however, that the instant application is not within the provisions of S.C. Rule 27.26 because that rule by its specific language provides that a motion thereunder attacks the sentence under which petitioner is then in custody. Instant petitioner attacks a sentence which he had long since served in full; he is in custody under a sentence pronounced in an independent and long subsequent proceeding. For like reasons, and probably others, we may not treat the application, as it stands, i. e., where it attacks only the prior judgment, as one for a writ of habeas corpus.

■ It would appear, therefore, that if petitioner may be heard at all to attack a judgment, the sentence under which has been completed, his remedy must be by motion in the nature of a writ of coram nobis. It therefore should be first determined whether there is any available remedy to attack the judgment under the noted circumstances, or, stated differently, whether the trial court had the power to entertain petitioner's application.

United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248, was a case in which a defendant attacked a federal conviction as invalid even though his sentence thereunder had been completed and, at the time of the application for relief, was incarcerated in a state prison to which he had been sentenced for a longer term by reason of the prior federal conviction. The opinion and the dissenting opinion express opposing views on the question we are now considering. The court said, 346 U.S. 512, 74 S.Ct. 253, 98 L.Ed. 257: "Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected." The writer of the dissenting opinion said, 346 U.S. 519, 74 S. Ct. 256, 98 L.Ed. 260, 261: "It may be said that the federal conviction is still being used against respondent and, therefore, some relief ought to be available. Of course the record of a conviction for a serious crime is often a lifelong handicap. There are a dozen ways in which even a person who has reformed, never offended again, and constantly endeavored to lead an upright life may be prejudiced thereby. The stain on his reputation may at any time threaten his social standing or affect his job opportunities, for example. Is coram nobis also to be available in such cases? The relief being devised here is either wide open to every ex-convict as long as he lives or else it is limited to those who have returned to crime and want the record expunged to lessen a subsequent sentence. Either alternative seems unwarranted to me.

"The important principle that means for redressing deprivations of constitutional rights should be available often clashes with the also important principle that at some point a judgment should become final—that litigation must eventually come to an end. These conflicting principles have traditionally been accommodated in federal criminal cases by permitting collateral attack on a judgment only during the time that punishment under the judgment is being imposed, and Congress has

so limited the use of proceedings by motion under 28 U.S.C. § 2255, 28 U.S.C.A. § 2255. If that is to be changed, Congress should do it."

As noted, the dissent in Morgan pointed out that 28 U.S.C. § 2255 had provided for a collateral attack on a judgment only during the time that the punishment under that judgment was being served and, as we understand, took the view that congressional enactment of that section indicated that the remedy there provided was exclusive. Of course, the premise for that view was the further opinion that there was no authority for a writ of error coram nobis under the all-writs section of the federal code and that, even if there was, the writ of error coram nobis would not lie because the errors of fact alleged in the application were errors, if any, which must have been known to the trial court at the time of disposition of the case.

The decisive opinion in Morgan, however, took the view that the writ of error coram nobis had not been abolished in federal criminal cases, that the power to issue the writ stemmed from the all-writs section, 28 U.S.C. § 1651(a), and that it could not be determined from the allegations in the application whether the alleged errors were ones which could or could not be corrected by relief in the nature of coram nobis.

The state, in the instant case, takes the position that coram nobis will not issue here because the errors alleged as destroying the validity of the judgment were all matters which must have been known to the trial judge on October 5, 1942, i. e., that the trial judge must have known of the youthfulness of defendant, whether he had counsel, whether he had intelligently waived counsel, and whether he understood the charge to which he pled guilty.

In State v. Harrison, Mo.Sup., 276 S.W. 2d 222, 223 [1–3], we said: "The writ of error coram nobis is a common-law remedy. The writ, or a motion or application for relief of that nature, is recognized in Missouri. The application is made to the trial court to correct errors of fact, not appearing on the face of the record, affecting the validity of proceedings which errors of fact were unknown to the party now seeking relief and to the court at the time of the disposition of the particular case, and which errors of fact, had they been known, would have prevented the rendition of the judgment."

■ We are not persuaded that it necessarily follows that the trial court in which defendant entered the plea of guilty in 1942 knew or must have known the facts alleged in the instant motion. True, a trial judge would know whether at the time he sentenced a defendant there was then present no counsel representing that defendant, but it does not inevitably follow what facts the trial judge knew or did not know relating to the circumstances which caused the defendant to appear without counsel at the particular time in question. Nor are we persuaded that the enactment of S.C. Rule 27.26, providing a procedure for attack upon judgments under which defendant is in custody, means that it was thereby intended to exclude any remedy to attack a judgment, the sentence under which has been served prior to the time of the filing of the motion of attack.

In State v. Terrell, Mo.Sup., 276 S.W.2d 219, decided at the same time as State v. Harrison, supra, petitioner there, in the same position as instant petitioner, had been sentenced on pleas of guilty in three cases, had complied with those sentences, and subsequently was convicted of another crime for which he had been sentenced to longer punishment by reason of those prior convictions. Terrell, also like instant petitioner, sought to attack the three prior convictions (on the ground that he had not been represented by counsel) by an application which we treated as "an application for a writ of error coram nobis." 276 S.W.2d 219. We held in Terrell that the trial court correctly denied relief under the motion because the files and records of the case showed that there was a specific finding in each of the three judgments that defendant was represented by a named attorney and that, consequently, the judgments so reciting

could not be impeached "by oral evidence dehors the record." In distinguishing the factual situation there from that in United States v. Steese, 3 Cir., 144 F.2d 439, relied on by Terrell, it was said that the Steese case had "held that a case may be reopened by a motion in the nature of a writ of error coram nobis to show that a fundamental constitutional right was denied a defendant. *We grant that to be correct.*" 276 S.W.2d 221 [2]. (Italics present writer's.)

It would appear, therefore, that this court in State v. Terrell, supra, by dicta at least, has recognized that an application for relief in the nature of a writ of error coram nobis is available to a defendant in the circumstances of the instant case to give defendant an opportunity to show that he was denied due process in violation of his constitutional rights and that the trial court has the power to and should hold a hearing pursuant to such application unless the circumstances to be presently noted require summary denial of the right to have the motion heard.

■ We are of the opinion that the foregoing, probably dicta in Terrell, is correct and represents a view which provides the machinery for righting conceivable wrongs which otherwise would stand uncorrected. We see no reason, however, why, in the administration of the available remedy, the petitioner should not be bound by the same provisions and limitations imposed by S.C. Rule 27.26. Consequently, we hold that a motion for relief in the nature of a writ of error coram nobis is available to attack a judgment of conviction, even after the sentence thereunder has been served, provided, however, that the motion for relief is for the cause or causes specified in Rule 27.26 and provided further that the trial court shall first examine the motion and the files and records in the case and refuse the writ (the hearing) in those cases where, from such examination, it appears that petitioner is entitled to no relief.

The "files and records of the case" apparently were not examined by the trial court to determine whether petitioner was entitled to a hearing, but, nevertheless, they were adduced in evidence at the hearing.

If the attacked judgment recited (as in State v. Terrell, supra) that defendant had been in fact represented by counsel at the time of his guilty plea and the ensuing sentence was pronounced, then we should ignore oral evidence to the contrary on the authority of State v. Terrell, supra. The judgment in the instant case, however, does not recite that plaintiff was represented by counsel but on the contrary recites that defendant, being then in custody, was brought into court by the sheriff and, by leave of court and the consent of the state, withdrew his former plea of not guilty and pled guilty to the charge of larceny of a motor vehicle; that the plea was accepted and defendant requested sentence; and that the sentence of three months in the St. Louis workhouse was pronounced. The "record book" and the minute book of the Circuit Court, Division 10, under date of October 5, 1942, each contained entries pertaining to defendant which did not affirmatively disclose that counsel represented defendant or that defendant had been advised of his right to counsel, although the deputy clerk testified that it was not customary to so show on those records. The "judge's docket book," prepared by the clerk, showed an entry of October 5, 1942, as follows: "Stanley Stodulski, Larceny of a Motor Vehicle, pleaded guilty, three months Workhouse." The deputy clerk who made the entry read that entry into evidence and said in addition, "Public Defender notated under the cause number," which he said indicated that the public defender had represented defendant. He also said, however, that the docket book was prepared two or three weeks prior to the date appearing thereon and that the information appearing thereon was taken from the "jacket" of the court file; that at the time of arraignment the fact of whether defendant was represented and the identity of the lawyer would be noted on the file jacket and later transferred to the judge's docket book. The "jacket" of the court file showed that on July 24, 1942, defendant pled not guilty and on October 5, 1942, defendant "withdraws former plea, pleads guilty as charged, sentenced to three months in the City Workhouse." On the other side of the

file there was "abbreviated, 'Public Defender'" which had been written there on the day of arraignment. There was no entry on any of the records indicating that the public defender had ever formally entered his appearance as attorney for defendant.

Thus the files and records of the trial court do not show, as we view it, independent of oral testimony, that defendant was represented by counsel at the time he withdrew his former not guilty plea, entered his guilty plea, and was sentenced thereon. The words "Public Defender," standing alone and without oral testimony in explanation, do not indicate that defendant was represented by counsel at any time. With the oral testimony in explanation those words appearing on the court file jacket and on the judge's docket indicate only that at the time of arraignment a lawyer from the public defender's bureau was appointed to represent defendant.

Defendant testified that at the time of the hearing he was 30 and at the time of his plea and sentence he was 17; that he was not asked by the court if he "wanted an opportunity to consult with your parents or lawyer"; that he did not have a lawyer; that he was visited by a representative of the public defender's office prior to the date of sentence; that his family intended to procure private counsel for him but none appeared; that he did not know what a "felony charge" was; that he talked with a man who came to see him about his case who he would assume was a lawyer; that another person offered to represent him but he informed that person that he was supposed to have a private attorney; that he had completed the fourth grade in school.

Joseph Noskay testified that since March 1942 he had been either director or assistant director of the Public Defender Bureau; that he interviewed defendant prior to arraignment and entered a plea of not guilty on defendant's behalf when defendant was arraigned; that prior to October 5, 1942, the bureau withdrew because they thought defendant had private counsel;

that a note in witness' file dated October 5, 1942, stated that defendant "has hired private counsel," and the name of private counsel appeared in another note in witness' file; that witness did not represent defendant on October 5, 1942, but did not know whether the named attorney did; that in a conversation with Mr. McFarland (apparently an assistant circuit attorney) subsequent to the time witness had withdrawn as counsel, defendant and his codefendant said to Mr. McFarland, in answer to his question as to whether they wanted the court to appoint the public defender or another lawyer, that having the public defender "is like having two prosecutors" and thus they did not wish the public defender appointed.

■ The burden was on defendant to prove the fact allegations of his motion upon which he based his contention that he had been denied due process under the state and federal constitutions. We shall assume, without deciding, that defendant's proof sustained a finding that he was in fact not represented by counsel on October 5, 1942, when he withdrew his not guilty plea and pled guilty. The fact remains that defendant has failed to sustain his burden to show that he did not intelligently waive his right to counsel. "Of course, the absence of a showing of waiver from the record does not of itself invalidate the judgment. It is presumed the proceedings were correct and the burden rests on the accused to show otherwise." United States v. Morgan, supra, 346 U.S. 512, 74 S.Ct. 253, 98 L.Ed. 257. Indeed, the evidence adduced at the hearing supports a reasonable inference that defendant did intelligently waive his right to counsel. The record shows that he was represented by counsel at the time of arraignment; that such counsel talked with him and withdrew only after being advised that defendant was to have private counsel; that prior to his guilty plea he was asked by one, presumably an assistant circuit attorney, whether he wanted the public defender or another lawyer to represent him; that at the time the very topic of discussion

was the case in which defendant later pled guilty.

The reasonable inferences from the foregoing evidence are, contrary to the allegations in his application, that defendant knew of his right to have counsel appointed by the court; that counsel was appointed by the court who represented defendant until such time as defendant no longer desired court-appointed counsel but wished counsel of his own choice. True, there is defendant's testimony that he did not, at the time of his guilty plea, know what a "felony charge" was, but there is no allegation or evidence that defendant did not understand that he was pleading guilty to having stolen a motor vehicle, and, incidentally, we observe that there was neither allegation nor proof that defendant was not in fact guilty of the offense to which he pled guilty.

Under the circumstances we hold that defendant failed to sustain his burden to show that he did not intelligently waive his right to counsel at the proceedings on October 5, 1942, and, therefore, irrespective of any other reasons which may also support the conclusion, defendant was not, for the reasons assigned in his motion, denied due process.

The trial court denied the "writ" and "remanded" petitioner "to the custody of the Warden of the State Penitentiary." As we view it, the trial court issued the "writ" when he determined that petitioner's application entitled him to a hearing. Furthermore, the warden's custody of defendant was not in issue. But, inasmuch as the effect of the order of the trial court was to hold that defendant was entitled to no relief, that order and judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

· The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.