STATE of Missouri, Respondent,

v.

Joe Nathan QUINN, Appellant.

No. 61266.

Supreme Court of Missouri,
En Banc.

Feb. 11, 1980.

Rehearing Denied March 11, 1980.

Robert C. Babione, Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, III, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Convicted by a jury of armed robbery, appellant was sentenced under the Second

Offender Act[1] to a term of twenty years. The Court of Appeals, Eastern District, affirmed the conviction in an opinion written by Crist, J. For the purpose of considering again the law regarding "instructing specially on mistaken identification," we ordered transfer and now decide the cause as an original appeal.

The sufficiency of the evidence is not challenged, and a brief recitation of the facts should suffice. About 11 o'clock one night a man and woman approached the office drive-in window of the Ebony Motel. The man inquired about room rates, then pointed a gun at the clerk and announced a holdup. The clerk put money, approximately $250.00, in the window. The man took it and fled.

Nine days later appellant was arrested in connection with the robbery. A few hours after the arrest, the clerk identified appellant in a lineup of five male subjects as the man who robbed her.

Appellant objects to the following in this appeal: (1) the admissibility of the state's proof of a prior conviction to invoke the Second Offender Act; (2) use of prior "invalid" convictions for impeachment; (3) testimony of the state's witness as to details of her pretrial identification of appellant; (4) absence of counsel at the lineup; and (5) the refusal to submit appellant's instruction on identification.

We find these claims without merit and affirm the judgment.

■ For the Second Offender Act to apply in a criminal prosecution the state must prove that the defendant was convicted of a prior offense punishable by imprisonment in the penitentiary, that he was sentenced for that offense and that he was placed on probation, paroled, fined or imprisoned therefor. *State v. Blackwell*, 459 S.W.2d 268 (Mo. banc 1970). To meet this burden the prosecutor in this case presented the testimony of the deputy circuit clerk and certain certified records. Outside the hearing of the jury, the clerk read into the record an entry in the minute book of the circuit court in which appellant first was convicted, which was as follows:

Wednesday, July 29, 1970, 2654–R, *State of Missouri v. Joseph Nathan Quinn*, 1969, on Information for Carrying a Concealed Weapon: Now on this day comes the Assistant Circuit Attorney for the State, and the Defendant herein, in person and in the custody of the Sheriff of this City, and in the presence of Robert G. McClintock, attorney and counsel, in open Court;

Whereupon, the Court orders the official court reporter to take notes to preserve the evidence;

Whereupon, by leave of Court and consent of the State, the Defendant withdraws his former plea of not guilty and now enters a plea of guilty to the crime of Carrying a Concealed Weapon, said plea being accepted by the Court upon a recommendation of the Assistant Circuit Attorney for the State; and being now asked by the Court if he has any cause to show why judgment should not be pronounced against him according to law, and still failing to show such cause, it is therefore sentenced, ordered and adjudged by the Court that the said Defendant Joseph Nathan Quinn, having pleaded guilty as aforesaid under an Information against him, shall be confined to the Department of Corrections of the State of Missouri for a period of Two (2) years, there to be kept and stand committed in the Department of Corrections and confined until the judgment and sentence of the Court herein be complied with or until said Defendant shall be otherwise discharged by due course of law.

It is further ordered by the Court that the Defendant be allowed six (6) months jail time prior to conviction in the above-titled cause.

It is further considered, ordered and adjudged by the Court that the State have and recover of said Defendant the

---

1. The Second Offender Act, § 556.280, RSMo 1969, was repealed as shown at p. 685, Laws of Mo.1977; but see § 558.016 of the new Criminal Code, which became effective January 1, 1979, reference "Extended terms for dangerous offenders."

costs in this cause expended, and that hereof execution issue therefor.

After a brief cross-examination, appellant's counsel objected to the admission of the record and moved to strike it on the ground that it did not show that appellant had waived his right to trial by jury and all the constitutional rights connected therewith or that the plea had a factual basis. This objection was overruled.

The prosecutor then introduced for the record a certified transcript of appellant's serial record from the Division of Corrections to establish the facts of his incarceration in prison and his subsequent discharge. Over more objections unrelated to this appeal, this record also was accepted by the court. The court then asked appellant's counsel if he had any other evidence he wished to offer with regard to these matters. Counsel replied he did not.

■ It is clear from these facts that the state met its burden by the admission of testimony and certified records to invoke the application of the Second Offender Act. In order to accept appellant's claim on this point, the Court would have to find the following: (1) that the minutes as admitted constituted the *entire* record of the guilty plea proceeding; (2) that as such the record was invalid on its face; (3) that the requirements of Rule 25.04 on the court's duty in accepting a guilty plea must be met affirmatively by the state in its proof for the application of the Second Offender Act; and (4) that upon objection to the "record" by appellant, the state has a further burden of overcoming such objection. This we cannot do under the facts of this case.

First of all, the certified records presented by the state were sufficient to require application of the Second Offender Act. The state need not present in such a case an entire transcript of a previous conviction showing all the circumstances and conditions surrounding that conviction. Because the entire record need not be presented, it cannot be alleged that the "record" is invalid on its face. The "record" as such is not before the court, only parts of it are. Moreover, because certain recitations are not in the minutes presented by the state, it cannot be assumed that the entire record is invalid for lack of those recitations.

■ The claim that the "record" is invalid on its face is crucial to appellant's point here because the majority rule, followed by Missouri, is that a person being prosecuted as a second offender may not raise questions of mere error in the former conviction to prevent the use of the Second Offender Act. *State v. Goff*, 449 S.W.2d 591, 593 (Mo. banc. 1970); *State v. Brinkley*, 354 Mo. 337, 189 S.W.2d 314, 331 (Mo.1945). As noted before, the whole "record" was not presented to the court, and on that basis alone, it cannot be said that the "record" is invalid on its face. In addition, appellant claims that Rule 25.04 is the guide by which it should be determined whether the requirements of the United States Constitution were met in appellant's prior conviction. If it were true that this rule was controlling in a Second Offender case such as this, appellant's point still must fail because it has been held that the lack of strict compliance with Rule 25.04 does not require that the guilty plea be set aside or vacated unless it can be established by a preponderance of the evidence that the plea was entered involuntarily or without the defendant understanding the nature of the charge. *Tyler v. State*, 476 S.W.2d 611 (Mo.1972); *Huffman v. State*, 451 S.W.2d 21 (Mo.1970); *State v. Mountjoy*, 420 S.W.2d 316 (Mo.1967). No evidence to this effect is present here.

■ As to the burden in a case such as this, appellant seeks to avoid his responsibility by circumventing the usual procedural requirements. As the Eastern District properly noted in its decision in this case, *State v. Goff, supra*, bars appellant's objection to admission of the prior conviction at a subsequent trial because of his failure to take timely advantage of the various remedies provided to set aside the judgment for invalidities not apparent on the face of the judgment. This rule applies because no patent invalidity of the record exists in this case. Had appellant attempted to set aside

the judgment through direct appeal of the earlier conviction, a Rule 27.26 motion or a writ of error coram nobis, the burden of establishing grounds for relief would have been on him. *See, e. g., State v. Jackson*, 477 S.W.2d 47 (Mo.1972); *Mooney v. State*, 433 S.W.2d 542 (Mo.1968); and *State v. Stodulski*, 298 S.W.2d 420 (Mo.1957). Appellant asserts that he did not file a 27.26 motion because he did not desire to run the risk, having served the sentence long ago, of being retried and subjected to another sentence. He sought a much more limited type of relief, to which end he objected to the state's use of the record of the prior conviction. It must be noted, in passing, that appellant's proper remedy, assuming he would be entitled to any relief, would have been by writ of error coram nobis because Rule 27.26 is limited to proceedings by persons still serving the sentence they seek to challenge. Regardless of the label, however, appellant cannot shift what would have been his burden of proof in the usual postconviction proceeding by using another approach to obtain the same result. Therefore, even if this Court were to allow this attack on the prior conviction despite appellant's failure to timely pursue the proper remedy, appellant could not prevail because he did not present any evidence to support his challenge.

It also is interesting to note in this regard that at no time in this case, from the objection at the robbery trial through the briefs and oral arguments before this Court, has appellant claimed that his plea to the earlier charge was involuntary or otherwise violative of his constitutional rights. Instead, all he has said is that the part of the record offered by the state was insufficient to show there was a factual basis for the plea, that the plea was voluntary, that appellant understood the consequences of his plea and that he waived his constitutional rights associated with trial by jury. Appellant must lose on this point, both for procedural and substantive reasons.

■ On the grounds stated above, appellant's second point is likewise without merit. Appellant admitted four prior convic-

tions, and the state possessed records relating to these offenses. The records were regular on their face, and the state's use of them was in good faith and proper for impeachment purposes.

■ Appellant's challenge to the admission of testimony of the state's witness as to her pretrial identification of appellant centers on a claim that there was no justification for the prosecution to bolster her unimpeached testimony. This is not a new issue to Missouri courts, although the cases dealing with it present varied approaches to the problem. After examining the relevant cases, we observe that the analysis by the Eastern District of the Court of Appeals in *State v. O'Toole*, 520 S.W.2d 177 (Mo.App. 1975), accurately portrays the evolution of the rule in Missouri. Any ambiguity existing in that regard over the years has now been cleared away. Testimony of an identifying witness as to his pretrial identification of the defendant is admissible. *See State v. Degraffenreid*, 477 S.W.2d 57 (Mo. banc 1972), and *State v. Hale*, 400 S.W.2d 42 (Mo.1966). It is not improper bolstering, and it is not hearsay because it is direct testimony as to a fact about which the witness has personal knowledge. Accordingly, appellant's claim is denied.

Suppression of the identification testimony also is sought for the reason that appellant was without counsel at the lineup. The trial record reveals that appellant was arrested and booked on charges of first degree robbery with a dangerous and deadly weapon and attempted robbery by means of a dangerous and deadly weapon at about nine o'clock in the morning. About 2:30 that afternoon, the lineup with appellant took place. Appellant infers from the record that the police made the arrest with a warrant. The information was filed 45 days after the arrest. Relying primarily on *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), appellant claims that the actions of the police in compelling him to participate in a lineup confronted appellant "with the prosecutorial forces of organized society and the intricacies of substantive and procedural criminal law" and at that stage of the proceedings, he was entitled to assistance of counsel.

This Court examined a similar claim in *Morris v. State*, 532 S.W.2d 455 (Mo. banc 1976). In that case a lineup was held the morning after a late night arrest of the defendant, who was without counsel. After examining the United States Supreme Court cases dealing with the point in time at which the right to counsel attaches, this Court said at 458:

Thus, we look again to the holding in *Kirby v. Illinois*, 92 S.Ct. 1877, 32 L.Ed.2d 411, *supra*, relative to the facts in the instant case. Therein, at l.c. 406 U.S. 689, 92 S.Ct. 1882, it was said that: '. . . while members of the Court have differed as to the existence of the right to counsel in the contexts of some of the above cases, all of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' Conspicuous by its absence is the date of the issuance of an arrest warrant . . ..

The Court said the defendant in that case had no right to counsel at the lineup.

■ The subsequent case of *Moore v. Illinois, supra*, in no way affects the validity of the *Morris* decision, and the rule remains that a pre-indictment, pre-information line-up is not a stage of the prosecution at which defendant is constitutionally entitled to counsel. The challenged identification in the *Moore* case, *supra*, occurred at the preliminary hearing, a stage clearly within limits of *Kirby* requiring counsel.

■ Lastly, appellant asserts the trial court erred in refusing to instruct the jury on appellant's theory of the case, *mistaken identification*. Missouri Approved Instructions do not include a section on mistaken identification. Although the instructions offered by appellant may have addressed the subject in the manner most preferable to him,[2] appellant's theory of defense was fully and properly instructed upon through the use of other instructions. Instruction No. 1, following MAI–CR 2.01, told jury members that "you alone must decide upon the believability of the witnesses and the weight and value of the evidence." It also set forth factors the jury could consider in determining the believability of the witnesses. Note 2 published with that instruction states that except as otherwise specifically provided in MAI–CR, no other instruction may be given on the believability of witnesses or the effect, weight or value of their testimony. Instruction No. 5, MAI–CR 7.62, required for a guilty verdict that the jury find and believe that at a stated time and place "the defendant, by means of a dangerous and deadly weapon, took the

2. The rejected instruction read as follows:

One of the issues in this case is the identification of Joseph Quinn as the perpetrator of the crime. On that issue you are instructed as follows:

1. The State has the burden of proving beyond a reasonable doubt that the defendant is the person who committed the crime;

2. It is not essential that the identifying witness be free from doubt as to the correctness of the identification. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may return a verdict of guilty. If you are not convinced beyond a reasonable doubt that the defendant is the person who committed the crime, you must find him not guilty.

3. Identification testimony is an expression of belief or impression by the witness. In appraising identification testimony you should consider the following:

A) The opportunity and capacity of the witness to observe the offender at the time of the offense; this is affected by how long or short a time was available, how far or how close the witness was, how good lighting conditions were, whether the witness had occasion to see or know the offender in the past;

B) The circumstances of an identification subsequent to the offense; this is affected by the witness' capacity for recollection, the length of time from the occurrence of the offense to the next opportunity of the witness to make an identification, the number and appearance of other individuals with the defendant when the identification was made, and any other circumstances which may have influenced the witness to identify the defendant as the person who committed the offense.

4. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

property from [the clerk] . . . ." Instruction No. 6, MAI–CR 3.02, was offered by appellant and read: "If you do not find and believe from the evidence beyond a reasonable doubt that Joe Nathan Quinn was the person who took money from Charlie Terry, you must find the defendant not guilty of Robbery First Degree by Means of a Dangerous and Deadly Weapon." The next instruction, MAI–CR 3.20 read:

One of the issues in this case is whether the defendant was present at the time and place the offense is alleged to have been committed. On that issue, you are instructed as follows:

1. The State has the burden of proving beyond a reasonable doubt that the defendant was present at the time and place the offense is alleged to have been committed.

2. If the evidence in this case leaves in your mind a reasonable doubt regarding the defendant's presence at the time and place the offense is alleged to have been committed then you must find defendant not guilty.

This last instruction is referred to in MAI–CR as pertaining to alibi.

Appellant has stressed the fact that the alibi instruction was based on evidence which came out in the cross-examination of the defendant and that he had not put on an alibi defense because the arrest was nine days after the robbery and appellant could not be specific about his whereabouts at that time. Although the committee on

criminal pattern instructions put a heading of "Alibi" on MAI–CR 3.20, nothing in the instruction that went to the jury in this case mentioned alibi or indicated that alibi was appellant's theory of defense. The instruction told the jury that the state had to prove beyond a reasonable doubt that appellant was present at the time and place of the robbery. In this case, MAI–CR 3.20 could be equally applicable for appellant's theory of misidentification as for a theory of alibi. In addition, MAI–CR 3.02, which also was given, told the jury it had to believe that appellant was the person who took the money from the clerk. Because these instructions fully submitted appellant's theory to the jury, the trial court did not err in refusing further instructions on the subject. *State v. Neal,* 514 S.W.2d 544, 547–48 (Mo. banc 1974); *State v. Collor,* 502 S.W.2d 258, 259 (Mo.1973); *State v. Peterson,* 546 S.W.2d 175, 181 (Mo.App.1976).

This Court is mindful that other jurisdictions have adopted special instructions on the theory of misidentification. *United States v. Greene,* 591 F.2d 471 (C.A. 8th Cir. 1979), is among the most recent decisions in this area. We believe that such instructions are unnecessary in the state courts of Missouri because the subject is adequately covered by other MAI–CR instructions.[3] Were we to adopt the *Greene* approach, however, the facts in that case were distinguishable from those presented here. There, defendant had raised serious questions about the possibility of misidentification, claiming that his brother-in-law re-

---

**3.** A case finding reversible error in refusing a defendant's instruction supporting a defense theory of erroneous identification is *State v. Murphy,* 415 S.W.2d 758 (Mo. banc 1967). That case was decided before criminal pattern instructions were adopted in Missouri on January 1, 1974. There the instruction refused read:

The Court instructs the Jury that if after considering all of the evidence in this case you do not find and believe beyond a reasonable doubt that the Defendant, Colleen P. Murphy, is the person who presented the check mentioned in evidence to one William Kohault of The William A. Straub Company on the 9th day of July, 1963, then you cannot convict the Defendant and it is your duty to acquit Colleen P. Murphy.

The state in that case contended that the alibi instruction given fully and fairly covered the same subject matter contained in the rejected instruction. The alibi instruction read:

The defendant in this case has interposed as a defense what is known in law as an alibi, that is, she asserts that even if the offense was committed as charged, she was, at the time of the commission thereof, at another and different place than that at which such offense was committed, and therefore, was not and could not have been the person who committed the same. Now, in this connection, you are instructed that you should acquit the defendant unless the evidence in the case, taken as a whole, including that of alibi, establishes the defendant's guilt beyond a reasonable doubt.

sembled him and was in the place where it was claimed that defendant was seen. In fact, as was said in that opinion, the jury apparently found enough physical similarity between the two to find the defendant not guilty on a count in which it was charged that the defendant had lied when he said his brother-in-law resembled him. In addition, the defendant presented testimony and physical evidence to support his misidentification theory. In the instant case, no such facts exist to raise doubt about the identification.

The judgment is affirmed.

BARDGETT, C. J., DONNELLY, RENDLEN and WELLIVER, JJ., and FINCH, Senior Judge, concur.

SEILER, J., dissents in separate dissenting opinion filed.

HIGGINS, J., not participating because not a member of the Court when cause was submitted.

SEILER, Judge, dissenting.

I respectfully dissent. For the reasons stated in my opinion concurring in result in *State v. Higgins*, 592 S.W.2d 151 (Mo. banc 1979) and my dissenting opinion in *State v. Taylor*, 589 S.W.2d 305, 309–10 n.2 (Mo. banc 1979), I believe that eyewitness identification testimony presents grave hazards due to the inherent unreliability of human perception and memory, and in the susceptibility of eyewitnesses to suggestive influences.. This is particularly true where, as here, the testimony of the single eyewitness was the only evidence linking defendant with the crime and where the identification was not made until nine days after the event.

Casting instructions (as done here) in terms of defendant's presence at the scene directs the jury's attention toward alibi— whether he was somewhere else at the time of the crime. That is not what the defense

was. The instructions used in the case did not focus the jury's attention on whether or not the eyewitness was correct in her identification of defendant as the guilty person. While the identification could not have been correct if defendant were in fact someplace else, if the eyewitness is mistaken in her identification, it is of no consequence where the defendant was. It is entirely possible that defendant could not recall or establish exactly where he was about eleven o'clock at night nine days earlier and yet not be the guilty man. Our present set of instructions does not afford defendant any means to require the jury to concentrate on identification, despite the acknowledged shortcomings and frailties of eyewitness identification. This is not being fair. Mistaken identification is a legitimate defense and this incompleteness in our instruction repertoire should no longer be permitted to exist. I believe that we should request our committee on pattern criminal instructions to draft recommended instructions on the subject.

---

This court framed the issue in that case as proof of criminal agency about which it said that the defendant had the right to make an affirmative and direct submission of her defense of misidentification.

A comparison of the instruction refused in *Murphy* and Instruction No. 6, MAI–CR 3.02,

given in this case (see page 9, *supra*) shows the two to be nearly identical. Therefore, it would appear that the pattern instructions formulated since *Murphy* have resolved the problem causing reversible error there.