**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Michael MULLEN, Defendant-Appellant.**

**No. 43814.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 12, 1982.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 17, 1982.

Application to Transfer Denied
Feb. 23, 1983.

William J. Shaw, Public Defender, Thea A. Sherry, E. Eugene Overall, Asst. Public Defenders, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., George R. Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

SATZ, Judge.

Defendant was convicted of burglary in the first degree, robbery in the first degree, sodomy and rape and was sentenced to consecutive terms of imprisonment of ten, fifteen, thirty and thirty years. Defendant appeals. We affirm.

At approximately 3:30 a.m. on May 2, 1979, while she was watching television from her bed, the prosecutrix heard footsteps. She called out, but there was no answer. She arose from her bed, went to the doorway connecting her bedroom to her kitchen and saw a stranger moving towards her through the kitchen. His features were visible by the light from the television set. The prosecutrix switched on the bedroom ceiling light. She was then face to face with the intruder, and she could see his face "very well." She stepped back into her room and pleaded not to be hurt. The intruder followed her, grabbed her arm and threatened to kill her.

The intruder, armed with a baseball bat, demanded money. The prosecutrix told him her money was under the mattress. He took two twenty dollar bills from the hiding place and stuck them in his pocket. He ordered the prosecutrix into the bed, again threatened her life and covered her head with a quilt. While she was under the quilt, she heard him ransack her room, opening drawers and throwing things on the floor. Soon his attention returned to the prosecutrix. He removed the quilt, blindfolded her and then forced her to fellate him and forced her to have sexual intercourse with him. He then had her fellate him again and had sexual intercourse with her again. He then forced the

prosecutrix to walk him through the house. He wanted to be taken to her daughter's bedroom. Again, she pleaded, this time for the safety of her children and grandchildren. The intruder fled before they reached the daughter's room. The prosecutrix estimated the length of time she actually saw her attacker was from 5 to 15 minutes.[1]

Immediately after the intruder left, the prosecutrix phoned the police. The time was approximately 4:00 a.m. Officer Collier of the Pagedale Police Department arrived at the prosecutrix's house in a few minutes. Over the objection of defense counsel, the prosecutrix was permitted to relate the description of the intruder she gave to Officer Collier. Officer Collier broadcast a brief description of the intruder over the police radio and, shortly thereafter, he broadcasted a more detailed description. Over the objection of defense counsel, Officer Collier was permitted to relate the details of the descriptions he broadcast over the radio. Officer Sturghill, of the Wellston Police Department, heard the broadcast over the radio in his patrol car. Fifteen to twenty minutes later he stopped a man who answered the description given. The location was approximately ¼ to 1 mile from the prosecutrix's home. The man's hair and clothes were soiled with grass and leaves and, although the morning was cool, he was perspiring heavily. Officer Sturghill took the man to Officer Collier at the crime scene. The prosecutrix, by that time, had been taken to the hospital. Officer Collier arrested the man. It was the defendant.

The prosecutrix testified that, on the same day as the incident, she identified the defendant from a photographic line-up and, at trial, she again identified the defendant from a photographic line-up and made a positive in-court identification of him.

Defendant's complaints center on the admission into evidence of the extra-judicial statements made by the prosecutrix and Officer Collier. Defendant challenges the testimony of the prosecutrix which related the description of her attacker she gave to Collier. Defendant contends this testimony is "hearsay" and a "prior consistent statement" improperly used to bolster the prosecutrix's in-court identification. For the same reasons, defendant challenges the testimony of Officer Collier which related the descriptions of the attacker he transmitted by radio. Defendant asserts Collier was only repeating what he had been told by the prosecutrix. Defendant's challenges are not persuasive.

At the time the prosecutrix related her pre-trial description of her attacker, her testimony was unimpeached. Her testimony was also unimpeached at the time she testified that she had made a pre-trial identification of defendant as her attacker from a photographic line-up and at the time she described the manner of this identification. Although the testimony of an unimpeached witness about his pre-trial identification has been attacked as inadmissible "hearsay" and as an inadmissible "prior consistent statement," these attacks have been rejected and this testimony has been held admissible. E.g. *State v. Quinn*, 594 S.W.2d 599, 603 (Mo. banc 1980); *see State v. DeGraffenreid*, 477 S.W.2d 57, 62 (Mo. banc 1972).[2]

---

1. On one occasion during cross-examination, she did state that she viewed the attacker "just a few seconds." This testimony came during the following questions and answers:

 "Q. You stated to [the prosecutor] that you viewed the assailant for about fifteen minutes, is that correct?
 A. I don't understand.
 Q. I will rephrase the question. How long did you view, how long did you have an opportunity to see the man who did these crimes against you?
 A. Oh, that was just a few seconds. It wasn't long. Just a few seconds.

 Q. After a few seconds—
 A. I would say about ten minutes, maybe.
 Q. Ten minutes, well, is it a few seconds or a few minutes?
 A. I'll say it was about five or ten minutes now because I saw him."

2. Defendant's characterization of the prosecutrix's testimony as "hearsay" and "a prior consistent statement" is questionable. She was in court and, as the declarant, she was subject to cross-examination. Thus, the underlying rationale of the hearsay rule-securing trustworthiness of testimonial assertions by cross-ex-

In *Quinn,* our Supreme Court stated that testimony of an unimpeached witness about his pre-trial identification "is not bolstering and is not hearsay because it is direct testimony as to a fact about which the witness has personal knowledge." Id. at 603. If a witness' testimony about his pre-trial identification of the defendant is admissible on those grounds, then certainly the witness' testimony about his actual pre-trial description of the defendant should also be admissible. Nonetheless, this Court has recently held that a victim's pre-trial description of her assailant is inadmissible if elicited on direct examination before her credibility is attacked. *State v. Williams,* 602 S.W.2d 209, 213 (Mo.App.1980). The Court approved "[t]he traditional rationale . . . that such statements are self-serving hearsay when offered to prove the truth of the matters asserted therein." Id. at 213. For our purposes here, we will assume the prosecutrix's testimony about her pre-trial description was erroneously admitted.

Also, as noted, defendant argues that Officer Collier's testimony relating the descriptions he transmitted by radio were inadmissible. Defendant bases his argument on what he perceives to be the rationale of *State v. DeGraffenreid, supra.* Without discussion, the state concedes this testimony of Officer Collier was improperly admitted into evidence. For our purposes here, we will accept the state's concession.

 Thus, for our purposes here, we have pre-trial descriptions of the assailant from two sources, both identifications assumed to be improperly admitted. Did this evidence improperly bolster the victim's identification of the defendant? We think

not. Admission of improper evidence is usually harmless if the fact sought to be shown is properly proved by other evidence. *State v. Nimrod,* 484 S.W.2d 475, 479 (Mo. 1972); *State v. Kennedy,* 513 S.W.2d 697, 700 (Mo.App.1974). The eyewitness here was an outraged victim of robbery, rape and sodomy, who was face to face with her attacker in a lighted room. He threatened her life and demanded money. She begged not to be harmed. For at least five minutes, if not longer, he was the focus of her attention, with no quilt or blindfold to interfere with her perception. For an additional twenty minutes, she was physically and emotionally brutalized. The victim had no problem in identifying the defendant as her attacker from a photographic line-up on the day of the incident. At trial, she identified him again from the photographic line-up and made a positive, unequivocal in-court identification.[3] The opportunity to observe her attacker under the noted circumstance, coupled with the intensely personal nature of the crimes, make the identification evidence of the victim so forceful that we can say with certainty that the identification of defendant was properly proved by evidence other than the improperly admitted evidence and the latter evidence did not "tip the scales" against defendant.[4] *See State v. Gibson,* 633 S.W.2d 101, 103–104 (Mo.App.1982); *State v. Montgomery,* 596 S.W.2d 735, 738 (Mo.App.1980); *State v. Starkey,* 536 S.W.2d 858, 864 (Mo. App.1976).

Judgment affirmed.

SMITH, P.J., and PUDLOWSKI, J., concur.

---

amination—was satisfied. *See State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981). Furthermore, if the pre-trial description were offered as a "prior consistent statement" to bolster the victim's identification of defendant, this testimony is not hearsay because "it is the fact of the consistent statement that affords the corroboration," IV *Wigmore, Evidence,* § 1132 (Chadbourn rev. 1972) not the truth of the matter asserted.

3. Defendant's pre-trial motion to suppress identification was denied. On appeal, defendant

does not contend this pre-trial photographic line-up was unduly suggestive.

4. In *State v. DeGraffenreid, supra,* the identification witness was a 78 year old man who viewed the defendant for somewhat "longer than a minute" from a distance of 78–80 feet. Under those circumstances, the police officer's corroborating testimony that this eyewitness had identified defendant from photographs and also a line-up "confirm[ed] the believability of the [witness'] testimony and thereby tip[ped] the scales against defendant." Id. at 64.