STATE of Missouri, Respondent,

v.

**Loren R. WILSON, Appellant.**

**No. WD 33637.**

Missouri Court of Appeals,
Western District.

March 15, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 3, 1983.

Application to Transfer Denied June 30, 1983.

Joe Willerth, Cochran, Kramer, Kapke & Willerth, Independence, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Rosalynn Van Heest, Asst. Atty. Gen., for respondent.

Before TURNAGE, P.J., and DIXON and CLARK, JJ.

TURNAGE, Presiding Judge.

Loren R. Wilson was found guilty by a jury of the Class A felony of first degree robbery, in violation of § 569.020 RSMo 1979. The jury assessed punishment at 25 years imprisonment, and the court pronounced sentence accordingly.

Wilson has appealed his conviction. He claims that the lineup in which he participated violated his right to counsel and was unduly suggestive, that the trial court erred in admitting evidence relating to another separate and distinct crime with which Wilson was charged, and that the trial court erred in admitting into evidence certain Department of Revenue records. Affirmed.

Ivan Gates, the owner of the Kingsridge Pharmacy in Kansas City, testified that at about 3:45 p.m. on Monday, May 11, 1981, two men, one of whom was quite tall and the other of whom was short and slim, entered the pharmacy and demanded at gunpoint that Gates give them narcotics.

Gates did so, and the two men left the pharmacy through the back door. Gates testified that he had been able to get a good look at the face of the larger man only, and was unable to identify Wilson at a pre-trial line-up.

Carolyn Young, the co-owner of a beauty shop located next door to the Kingsridge Pharmacy, testified that while she was in her shop on the afternoon of May 11, she observed a car stop outside the building. Two men, one of whom was noticeably larger than the other, got out of the car, and the car drove off. Both men entered the pharmacy. Young testified that she had about a minute to observe the men in daylight. She positively identified Wilson in court as the smaller man.

Young's son, Jeff Willyard, testified that he had been at his mother's beauty shop on the afternoon of May 11. On hearing that there was a robbery in progress, he walked next door to the pharmacy. Before he reached the door to the pharmacy, he noticed two men standing inside at the counter. He testified that the larger of these two men was holding a gun. Willyard said that he had a good view of the pharmacy, and upon viewing a photo array, he identified Wilson as the smaller man. Willyard testified that he had also seen the smaller of these two men on the afternoon of the previous day, Sunday, May 10. Willyard testified that while cleaning his mother's shop on that day, he had seen the smaller man drive up and stop in front of the pharmacy and the beauty shop. The man got out of the car, looked around, and removed a large cinder block from the car. A while later the man returned to the car, replaced the cinder block, and drove off. Before the car was out of view, Willyard noted the license number. In court, Willyard positively identified Wilson as the smaller of the two men involved in the robbery.

Lynn Bevelot testified that he had been employed as a hairdresser at the beauty shop on May 11, 1981. He had accompanied Jeff Willyard from the beauty shop to the pharmacy, and observed two men inside the

pharmacy at the counter. Bevelot corroborated Gates' and Willyards' testimony that one of these men was considerably larger than the other, and that the larger of the two men was holding a gun. Bevelot identified Wilson in court as the smaller of these two men.

Wilson did not testify at the trial, but did produce three alibi witnesses. On May 13, 1981, Carolyn Young, Lynn Bevelot, and Jeff Willyard viewed an array of six photographs, one of which was of Wilson. Each of these three witnesses picked out Wilson's picture as the smaller of the two men they had seen in the pharmacy on May 11. On May 18, 1981, Wilson participated in a line-up which was viewed by Young, Bevelot, and Ivan Gates. Young and Bevelot identified Wilson as the smaller of the two men they had observed in the pharmacy on May 11.

Prior to his trial, Wilson filed a motion to suppress the pretrial identification procedures and all in-court identifications of him. Wilson's grounds for this motion were that the pre-trial line-up had been unnecessarily suggestive, and that his sixth amendment right to counsel had been violated. A hearing on this motion was held prior to the trial, and the motion was overruled.

■ Wilson first claims that the fact that he had no counsel present at the line-up constituted a violation of his sixth amendment right to counsel. The law in Missouri is clear that a criminal defendant has a right to counsel at a line-up only if that line-up is conducted after the defendant has been charged by indictment or information. *State v. Quinn,* 594 S.W.2d 599, 604[10] (Mo. banc 1980).

■ The record in this case indicated that the information was filed on May 27, 1981, and the line-up was held on May 18, 1981. Thus, under *Quinn* Wilson was not entitled to counsel at the line-up. Wilson relies on *Arnold v. State,* 484 S.W.2d 248, 250[3] (Mo.1972), which held that a defendant was entitled to an attorney at a line-up conducted after a complaint was filed. However, *Arnold* was overruled in *Morris v.*

*State,* 532 S.W.2d 455, 458[1] (Mo. banc 1976), which held that the right to counsel does not attach until the indictment or information is filed. That holding was reiterated in *Quinn.* Thus, Wilson's right to counsel had not attached at the time that the line-up was conducted.

■ Wilson next contends that the court should have suppressed the pre-trial identifications which the witnesses made, and that it should not have permitted the in-court identifications because the line-up was suggestive and conducive to his misidentification. The grounds for Wilson's objection to the line-up are that he was the shortest participant in the line-up, weighed the least, and was the only participant with crossed eyes. He also points to the fact that while the other three males were wearing either white or dark solid shirts, he appeared in a flowered shirt.

The standard for judging the acceptability of pre-trial identification procedures was set forth in *State v. Higgins,* 592 S.W.2d 151, 159[11] (Mo. banc 1979):

> The resolution of this issue requires a two-step analysis. Were the investigative procedures employed by the police impermissibly suggestive? If so, were they so impermissibly suggestive as to create a very substantial likelihood of an irreparable misidentification at trial?

Whether such dangers exist in a given case requires "examining the 'totality of the circumstances'," *Higgins* at 159[12], *quoting Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

Based on the above standards, the pre-trial procedures employed in this case were not impermissibly suggestive. Willyard, Bevelot, and Young were shown the same pictures in court which the police had shown them prior to trial. The pictures were received into evidence at that time and have been filed with this court. Of the five individuals pictured other than Wilson, one of the men clearly has crossed eyes. The pictures of Wilson, on the basis of which each of the witnesses was able to make a pre-trial identification, do not clearly show that his eyes are crossed. If in fact

the smaller man's crossed eyes were the only feature which the witnesses could have recognized, they would have chosen the picture of the man with severely crossed eyes rather than the picture of Wilson.

A picture of the line-up was also introduced into evidence and filed with this court. Of the four men pictured, Wilson and two others are of comparable height. While one man appears to be heavier than Wilson, the two others appear to have approximately the same proportions. While the picture of the line-up does not sufficiently show the eyes of the four to reveal if any have crossed eyes, there is nothing about the appearance of the men's faces in the area of the eyes to make any of the four stand out.

■ The fact that a defendant is the only one in a line-up wearing a certain kind of clothing does not render the line-up improperly suggestive, as long as the witnesses do not place any significance on that fact, and the clothing is not the same worn at the time of the crime. *State v. Lynch,* 528 S.W.2d 454, 460[10] (Mo.App.1975). In this case there is no evidence either that Wilson was wearing a flowered shirt at the time of the crime, or that the witnesses placed any significance on the fact that he was wearing a flowered shirt at the line-up. Thus, Wilson's shirt did not render the line-up impermissibly suggestive. In conclusion, the line-up was not suggestive in that it showed four men, none of whom had any outstanding characteristics which would have impermissibly led to Wilson's being identified.

■ In determining the reliability of an in-court identification, the fundamental standard is again the totality of the circumstances test. *Higgins* at 160[13]. The specific factors which the court is to consider are (1) the opportunity of the witness to observe the defendant at the time of the crime, (2) the degree of attention paid by the witness, (3) the accuracy of the witness' prior description, (4) the level of certainty demonstrated by the witness, and (5) the length of time between the crime and the confrontation. *Higgins* at 160[14].

■ Wilson does not claim that any of those specific factors were not present and an examination of the facts of this case reveals that each of these criteria was in fact met. The witnesses each had a good opportunity to observe Wilson in daylight, and all were paying close attention to him because of their suspicion that a robbery was in progress. Each of the witnesses gave a description of Wilson which proved to be accurate, each was certain of the identification, and the time between the crime and the initial identification was just a week. Since reliability, not suggestiveness "is the linchpin in determining the admissibility of identification testimony . . . ," *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), this court concludes that the identification testimony in this case was reliable, and that its admission did not violate Wilson's due process rights.

■ Wilson's next argument is that the trial court erred in permitting, over objection, the admission into evidence of Jeffrey Willyard's testimony regarding his observations of Wilson on May 10, 1981. The basis for Wilson's objection on this point is that this testimony related to another crime with which Wilson was charged, and was thus inadmissible as evidence of another illegal act different in nature from those acts for which Wilson was charged in this case.

During the course of the hearing on Wilson's motion to suppress, Willyard testified that on Sunday, May 10, he had observed Wilson throw the cinder block at the pharmacy window in an apparent effort to gain entry into the pharmacy. However, in the course of his testimony before the jury, Willyard made no mention of the fact that Wilson had thrown the block at the pharmacy. Willyard's only reference to the jury regarding the cinder block was that he had seen Wilson take the cinder block out of and place it back into his car.

The plain answer to this contention is that the jury heard no testimony relating to another crime. The only evidence it heard

was that Wilson took a block out of his car and later put it back in the car. Wilson concedes that these actions, in and of themselves, do not constitute a crime. Thus, there was no error in admitting that evidence.

 Wilson's final contention is that the trial court erred in admitting into evidence the Department of Revenue records showing that the automobile Wilson was driving when he stopped in front of the pharmacy on the day before the robbery was owned by Wilson's wife. The automobile was identified on the basis of its license number, which was noted by Willyard as he observed Wilson on that occasion. These records were admitted pursuant to § 302.312 RSMo 1972, which provides:

> Copies of all papers and documents lawfully deposited or filed in the offices of the department of revenue and copies of any matter recorded in the offices, properly certified by the appropriate custodian or the director, shall be admissible as evidence in all courts of this state in the same manner and with like effect as the originals.

It is Wilson's position that this statute applies only to cases involving the suspension or revocation of a driver's license. This interpretation is contrary to the very language of the statute, which refers to the admissibility of the papers "in all courts of this state."

Wilson's second argument relating to this issue is that in spite of the fact that the records were properly certified, the fact that they were introduced without the keeper of the business records having testified to provide a foundation for their introduction constituted a violation of the hearsay rule. This argument was directly addressed and refuted in *State v. Huffman*, 627 S.W.2d 672, 673 (Mo.App.1982), where the court held that "[w]hen the records were properly certified, it was not necessary for a custodian to testify as to the identity of the documents." Thus, the De-

partment of Revenue records were properly admitted.

The judgment is affirmed.

All concur.