UNITED STATES of America, Appellee,

v.

Merle O. GREENE, Jr., Appellant.

No. 78–1336.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1978.

Decided Feb. 1, 1979.

Rehearing Denied Feb. 26, 1979.

Robert G. Duncan of Duncan & Russell, Kansas City, Mo., argued and on brief, for appellant.

Kenneth Josephson, Asst. U. S. Atty., Kansas City, Mo. (argued), and Ronald S. Reed, U. S. Atty., Kansas City, Mo., on brief, for appellee.

Before LAY and McMILLIAN, Circuit Judges, and LARSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Defendant Merle O. Greene, Jr. appeals from a judgment entered on a jury verdict finding him guilty on three counts of knowingly making a false material declaration in violation of 18 U.S.C. § 1623.[1] The false declarations were allegedly made in a hearing held before the Honorable Calvin K. Hamilton, Chief U.S. Magistrate Judge for the Western District of Missouri, to determine if defendant had violated the conditions of his bail by traveling beyond the geographic boundaries imposed upon him.[2] Defendant was sentenced to one year on Count II and fined $1,000. On Counts I and III the imposition of sentence was suspended.

For reversal defendant urges that the alleged false declarations were not material and the trial court erred in failing to give the eyewitness instructions requested by defendant. We affirm as to Count II but agree with defendant that, as to Counts I and III, the trial court erred in failing to give the eyewitness instruction. Therefore, we reverse and remand on this basis.

After being convicted on federal charges of mail fraud, defendant was released on $5,000 secured bond pending appeal.[3] One of the conditions of his bond was that de-

---

* The Honorable Earl R. Larson, Senior District Judge for the District of Minnesota, sitting by designation.

1. Count I charged that Merle O. Greene made a false declaration when he said he was not on Flight # 245 to Los Angeles on September 26, 1977. Count II charged that he made a false declaration when he said he was not in Los Angeles but was in Chicago from September 26, 1977 to October 4, 1977. Count III charged that Greene made a false declaration when he said that his mother, Julia Greene, was not on Flight # 245 from Kansas City to Los Angeles on September 26, 1977. Count IV alleged that Greene made a false declaration when he said his brother-in-law (who he claimed was probably mistaken for him on the flight) resembled him in complexion, height, build, age, etc. The jury found Green not guilty on Count IV and this count is not at issue in this appeal.

2. Judge Hamilton found that Merle Greene and Julia Greene violated their bonds and increased Greene's $5,000 secured bond to $10,000 secured bond and Julia Greene's from a $5,000 unsecured bond to a $5,000 secured bond. On November 11, 1977, District Judge Bogue, who heard defendant's original charge, set defendant's bond at $10,000 and set the boundaries of the United States as the travel limitation.

3. This court affirmed defendant's conviction on August 16, 1978. *United States v. Greene*, No. 78–0006–01–CR–W–4 (W.D.Mo.), *aff'd sub nom. United States v. Fuel*, 583 F.2d 978 (8th Cir. 1978).

fendant could not travel beyond the Kansas City city limits. On September 26, 1977, defendant secured Judge Hamilton's permission to go to Chicago on September 26 until October 26, 1977, for business. One of the restrictions on Greene's trip was that he keep Ronald Ninemire of the Pre-Trial Services Agency informed at all times of the address and telephone number at which he could be reached. On October 4 and 5, Ronald Ninemire attempted to make a routine check on defendant in Chicago but was unable to locate him at the telephone number provided by defendant. Ninemire then attempted to locate defendant at the telephone number in Los Angeles which his records disclosed as one of defendant's prior addresses. Ninemire talked briefly with a man he stated sounded like Greene. This man hung up the telephone after stating there was no one at that residence by the name of M. Greene or Merle Greene.

Ms. Jean Shanholtzer, the court reporter for District Judge Russell Clark, viewed defendant and Julia Greene for approximately one and one-half hours in a courtroom during their bail hearing on September 7, 1977, while serving as court reporter. At trial Ms. Shanholtzer testified that she saw Merle and Julia Greene, with other members of their family, on TWA Flight # 245 which she was also taking to Los Angeles on September 26, 1977. In addition, Ms. Shanholtzer testified that she saw defendant at the Los Angeles airport after the flight, collecting his luggage.

Based upon Ronald Ninemire's inability to locate defendant in Chicago and Ms. Shanholtzer's observation of defendant and his mother on the flight to Los Angeles, a hearing was held before Judge Hamilton to determine if Merle Greene had violated the conditions of his bond. In addition to Ninemire and Shanholtzer, there were several witnesses from Los Angeles. An accountant at a restaurant in Los Angeles testified that a $108 dinner bill was charged to Merle O. Greene's American Express card on October 4, 1977. An Aetna loan officer, who had assisted Merle Greene and his wife with loans in the past two years, testified that they both visited his office in Los Angeles

on October 7, 1977, and completed the application for a real estate loan. There was also a stipulation that gasoline from a Los Angeles service station was purchased with a Chevron credit card in Greene's name on October 4, 1977, for a car with license plates also registered to Greene. A Postal Inspection Service document analyst testified that the signatures on the Aetna real estate loan application, the charge receipt at the restaurant, and the charge receipt at the gasoline station were defendant's.

The above evidence was presented by the government to prove its case that defendant made false statements when he stated at the hearing that: he was not on Flight # 245 on September 26, 1977 (Count I); he was not in Los Angeles any time between September 26 and October 14, 1977 (Count II); and, his mother, Julia Greene, was not on Flight # 245 (Count III).

Defendant presented evidence from family and friends to rebut all of the above. Essentially these witnesses corroborated defendant's story that he took his wife and children to the airport and, after helping them get situated on the airplane, left the airport and went to Chicago by car a couple of days later. Defendant's landlord in Kansas City testified, and produced records verifying, that he repaired defendant's plumbing on September 27 and was invited into the duplex by defendant. Defendant testified that on September 27, 1977, while in Kansas City, he had his car repaired at Williams Garage. He produced his receipt from the garage which was dated September 27, 1977.

Defendant's first allegation of error is that even if he made false statements, the statements were not material, which is an essential finding to convict under 18 U.S.C. § 1623. *United States v. Beitling*, 545 F.2d 1106, 1109 (8th Cir. 1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 596 (1977); *United States v. Phillips*, 540 F.2d 319, 328 (8th Cir. 1976), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976).

Defendant's argument is two-fold. First, he argues that perjury cannot arise from false testimony given at a hearing which is not legal. *Cf. United States v. Doss*, 563 F.2d 265, 276–77 (6th Cir. banc 1977) (defendant could not be prosecuted for perjury although he gave false answers to a grand jury where there was a clear abuse of process by the U.S. Attorney); *Brown v. United States*, 245 F.2d 549, 552 (8th Cir. 1957) (defendant was not guilty of perjury although he gave false testimony, because the grand jury was without authority to inquire into offenses). Defendant argues that his bond revocation hearing was not "legal" because it concerned bond limitations which should not have been imposed. According to defendant, Judge Hamilton imposes travel limitations on *all* bonds he sets without considering the necessity of such a restriction in each individual case, as required by the Bail Reform Act of 1966, 18 U.S.C. § 3146(b), and by case law, *United States v. Skrypeck*, 164 U.S.App.D.C. 351, 353, 505 F.2d 458, 460 (1974); *United States v. Cramer*, 451 F.2d 1198, 1200 (5th Cir. 1971). In other words, argues defendant, Judge Hamilton imposes travel restrictions in violation of statutory and case law. This makes any hearing concerning possible violations of these restrictions illegal. And, because the hearing is illegal, perjury cannot arise out of any statements made at the hearing.

■ We cannot accept defendant's argument. Defendant never contested these restrictions until now and there is absolutely no evidence that Judge Hamilton failed to consider the factors in 18 U.S.C. § 3146(b) in imposing the travel restrictions. These restrictions were proper and the hearing on the alleged violation of them was proper. Therefore, there can be no basis for defendant's assertion that he should not be held liable for his allegedly false statements.

■ Defendant's second argument on the materiality issue is that Judge Hamilton had already made up his mind that defendant violated his bond travel restrictions after hearing Ronald Ninemire's evidence that he was unable to contact defendant in Chicago. Therefore, according to defendant, the alleged trip to Los Angeles and defendant's statements with regard to the trip did not affect Judge Hamilton's decision. Again, we cannot accept defendant's argument. Judge Hamilton specifically testified that Greene's testimony was material and that he did not make up his mind as to what action he was going to take until after the hearing. At the hearing, defendant's counsel asked Judge Hamilton if he had made up his mind on the outcome of the case and thus if it was necessary for his client to testify. Judge Hamilton responded that he would not make up his mind until he had heard all of the testimony. From this evidence we find that the false statements defendant allegedly made were material within 18 U.S.C. § 1623.

■ The more serious question presented by defendant on appeal is whether the eyewitness identification instructions he requested, Instructions No. 6 and No. 7,[4]

---

4. REQUESTED INSTRUCTION NO. 6
    There is an issue in this case as to whether or not the defendant was in fact on Trans World Airlines Flight 245 going to Los Angeles and in Los Angeles and this issue necessitates your resolving any conflict or uncertainty in testimony on that issue.
    The burden of proof is on the prosecution with reference to every element of the crime charged and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the person being on Trans World Airlines Flight 245 and being in Los Angeles.
REQUESTED INSTRUCTION NO. 7
    Identification testimony is an expression of belief or impression by the witness. In this case its value depends on the opportunity the witness had to observe whether or not the defendant was the person on Trans World Airlines Flight 245 and in Los Angeles and to make a reliable identification later.
    In appraising the identification testimony of a witness, you should consider the following:
    (1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?
    Whether the witness had an adequate opportunity to observe the person at the time will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had

should have been given. The second of these instructions was drafted by the Court of Appeals for the District of Columbia in *United States v. Telfaire*, 152 U.S.App.D.C. 146, 152–153, 469 F.2d 552, 558–559 (1972), in an effort to alleviate some of the problems of misidentification. It has traditionally been recognized that identification testimony presents special problems of reliability because the in-court testimony of an eyewitness can be devastatingly persuasive. *Cf. United States v. Hodges*, 515 F.2d 650, 653 (7th Cir. 1975); *United States v. Telfaire, supra*, 152 U.S.App.D.C. at 149, 469 F.2d at 555. Therefore, it is essential that a jury be aware of the conditions under which the observation was made, the physical ability of the witness to observe the defendant, and any possible problems which could distort the witness' observation powers and judgment.

This Circuit in *United States v. Dodge*, 538 F.2d 770 (8th Cir. 1976), *cert. denied sub nom. Escamilla v. United States*, 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977), while not absolutely mandating the *Telfaire* instruction in all eyewitness cases, stated that we would "view with grave concern the failure to give specific and detailed instructions on identification in future cases where identification of the defendant is based solely or substantially on eyewitness testimony." *Id.* at 784. *See also Durns v.*

*United States*, 562 F.2d 542, 549–50 (8th Cir. 1977).

Defendant argues that the trial court erred in failing to give this instruction because, as to Counts I and III, the eyewitness testimony of Ms. Shanholtzer was essential for the conviction. We agree and reverse and remand defendant's conviction on these Counts.

Count I charged that defendant falsely stated that he was not on TWA Flight # 245 to Los Angeles on September 26, 1977. Count III charged that defendant falsely stated that his mother, Julia Greene, who was also on bond and under the same travel limitations, was not on the flight in question.

As we stated in *Dodge, supra*, 538 F.2d at 784, the basic question is whether the eyewitness testimony is essential to support a conviction. This is clearly the case as to Count I. The government was unable to produce any evidence that would show that defendant was on Flight # 245. Although TWA ticket agents testified that their records showed that a ticket was purchased for a M. Greene, this was a child's ticket and could not be used by an adult. Moreover, the TWA records indicated that none of the tickets had been paid for by Merle Greene.[5] Therefore, the only evi-

---

occasion to see or know the person in the past.

(2) Are you satisfied that the identification made by the witness subsequent to the event was the product of his or her own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

(3) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had

the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identify of the defendant as being the person on Trans World Airlines Flight 245 and being in Los Angeles. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find in favor of the defendant on this issue.

5. There was evidence that on September 25, 1977, the day before the flight in question, two adult reservations were made on Flight # 245 to Los Angeles. However, these reservations had not been paid for; the actual tickets had not been made up; and the TWA ticket records showed that a child and a woman, Ms. S. Greene, actually used the two tickets reserved in the Greene name.

dence that Merle Greene was on Flight # 245 was the eyewitness testimony of Ms. Shanholtzer. We realize, of course, that there was considerable circumstantial evidence that Merle Greene was in Los Angeles on October 4, 1977 (the restaurant bill, the Aetna loan negotiations, the gasoline purchase), but there is no evidence, independent of the eyewitness identification, that Greene travelled to Los Angeles on Flight # 245 on September 26, 1977.

Defendant has also raised serious questions about the possibility of misidentification. He claims that his brother-in-law, Joel Santiago, resembles him physically and was on Flight # 245 with other members of his family. This presents the possibility that Ms. Shanholtzer, who thought she saw defendant, actually saw his brother-in-law. This Court has not had the opportunity to personally evaluate the similarity between defendant and Mr. Santiago, but the jury has. It apparently found enough physical similarity between the two to declare defendant not guilty on Count IV wherein the government charged that defendant lied when he said his brother-in-law resembled him physically.

Defendant's mistaken identity theory is supported by the testimony of his landlord who testified that he was invited into Greene's home by Greene on September 27, 1977, to repair plumbing. It is further buttressed by the Willaims Garage receipt indicating that Greene's car was repaired in Kansas City on September 27. We are not intimating that this evidence presented by defendant is sufficient to entitle defendant to an acquittal on this Count but we believe it raises enough of a question about Ms. Shanholtzer's eyewitness identification to warrant the additional protection against misidentification that the *Telfaire* instruction provides.

Lastly, the trial court's instructions to the jury failed to highlight the problems with the eyewitness identification. The trial court informed the jury of their duty to find defendant guilty beyond a reasonable doubt and discussed some considerations pertaining to the credibility of all witnesses.[6] The trial court, however, never called the jury's attention to the fact that there

---

**6.** BURDEN OF PROOF INSTRUCTION

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense—the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly in the most important of your own affairs.

The jury will remember that a defendant is never to be convicted on mere suspicion or conjecture.

The burden is always on the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to the defendant; for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

A reasonable doubt exists whenever, after careful and impartial consideration of all the evidence in the case the jurors do not feel convinced to a moral certainty that the defendant is guilty of the charge. So, if the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury should of course adopt the conclusion of innocence.

CREDIBILITY OF WITNESS INSTRUCTION

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

was a crucial eyewitness identification involved or elaborated as to any of the dangers of misidentification. In *Dodge*, part of this Court's reasoning in finding no reversible error in the failure to give the *Telfaire* instruction was the fact that, in addition to the reasonable doubt standard and the credibility of witness instruction, the trial court also gave an instruction which specifically alerted the jury to the fact that identification was a crucial issue in the case. *United States v. Dodge, supra*, 538 F.2d at 784.

■ Thus, three problems which were not existent in *Dodge* and which this Court found significant in holding that there was no reversible error in the trial court's failure to give the *Telfaire* instruction, are present with respect to defendant's identification by Ms. Shanholtzer: the eyewitness identification is the sole basis for the conviction; there is the possibility of misidentification; and the trial court did not give an instruction alerting the jury to the crucial role the eyewitness identification plays in this case. In light of these problems, the eyewitness instruction requested by defendant should have been given as to Ms. Shanholtzer's identification of defendant.

We also find that the trial court erred in not giving the eyewitness instruction as to Ms. Shanholtzer's identification of Julia Greene. Although the need for the instruction is not as obvious in this instance as it was with regard to Ms. Shanholtzer's identification of defendant, the district court should not wait until there is a blatant need for the eyewitness instruction.

Unlike its case as to Count I, the government was able to produce some evidence, albeit circumstantial, that defendant's mother, Julia Greene, was on Flight # 245 and thus that defendant was guilty of Count III. TWA ticket officials testified that a ticket bearing the name Julia Greene was actually used on the flight and that Julia Greene paid for the ticket. While this testimony suggests that Julia Greene was on the flight, it is not conclusive because it is impossible to confirm that the person whose name was on a ticket actually used that ticket. Nor is it determinative that Julia Greene purchased a ticket because

family members often purchase tickets for use by other family members. Therefore, as to Count III, the independent evidence produced by the government is not conclusive and the testimony of Ms. Shanholtzer that she saw Julia Greene serves as the essential link in an otherwise inconclusive case.

■ We hold that, because of the importance of Ms. Shanholtzer's identification of Julia Greene, the questions regarding Ms. Shanholtzer's previous opportunity to become familiar with Ms. Greene's appearance, and the inherent problems of eyewitness testimony, Instruction No. 7 should have been given as to Count III. For this reason, defendant's conviction on Count III is reversed.

In conclusion, because of the trial court's failure to give Instruction No. 7 as requested by defendant, we reverse his conviction as to Counts I and III. We find no reversible error in the trial court's failure to give Instruction No. 6 requested by defendant because once a jury has been given the *Telfaire* instruction and the burden of proof instruction, Instruction No. 6 is unnecessary.

For the foregoing reasons, the judgment of the district court is affirmed as to Count II and reversed and remanded as to Counts I and III.