STATE of South Dakota, Plaintiff
and Appellee,

v.

Melvin GREY OWL, Defendant
and Appellant.

No. 12927.

Supreme Court of South Dakota.

Argued May 21, 1980.

Decided Sept. 3, 1980.

Leann Larson Finke, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Max A. Gors of Maher & Gors, Pierre, for defendant and appellant.

HENDERSON, Justice.

### ACTION

Melvin Grey Owl (appellant) was convicted by a Hughes County jury on September 24, 1979, of attempted rape and attempted incest. Grey Owl appeals from the judgment of conviction. We reverse.

### FACTS

Victoria Walking Bull, the victim, age 25, is the niece of appellant. Evidence at trial established that since her father's death, she had become close to appellant. She visited with appellant, wrote to him, and occasionally resided at his home and appellant occasionally resided at her home. The victim is married, has four children between the ages of seven years and four months, and lives in Pierre, South Dakota.

On August 17, 1979, appellant spent the night at the victim's trailer home in Pierre en route from Ft. Thompson, South Dakota, to Bismarck, North Dakota. He left early on Saturday, August 18, 1979, for Bismarck and returned to the victim's home between 6:30 and 7:00 p. m. that evening with his children, ages four and two. The victim gave appellant a grocery list, which he went out and filled, returning to the trailer at or about 9:30 or 10:00 p. m.

According to the victim, she prepared food and everyone watched television until midnight. The victim further testified that at that time, she and her four children retired to the front bedroom and living room and the appellant and his two children slept in the back bedroom. The victim tes-

tified that she and her children went to bed without removing or changing their clothes that they had worn that day. The victim testified that she was wearing summer shorts and shirt.

According to the victim, she awoke to the smell of "Old Spice" hair oil which she knew to be appellant's favorite brand. The victim testified that she was lying on her back on the bed in the front bedroom and appellant was standing over her trying to part her legs and imploring her to accept his advances. Appellant and the victim were then both naked, according to the victim. The victim testified that she struggled with appellant, escaped, and fled. The victim further testified that she picked up her clothes as she ran down the hall, went out of the trailer, and quickly dressed.

Ms. Walking Bull testified that she then ran to the home of her cousin, Arlette All Around, who lived a short distance from her. The victim informed Ms. All Around and her boyfriend, Ronnie McBride, of the events which had just transpired and requested their assistance in expelling appellant from her trailer. The three of them arrived at the victim's trailer within eight minutes. There was no sign of appellant, his children, his belongings, or his car. The trailer was locked and the victim's daughter opened the door from the inside to permit the victim and her two companions to enter. After surveying the premises, the victim, her daughter, Ms. All Around, and McBride went to the Pierre police department. They arrived at approximately 1:00 a. m. on Sunday, August 19, 1979.

The police dispatcher called Patrolman Sichard Bittner who, in turn, requested the assistance of Detective Charles G. Swanson. All three of these officers testified that the victim was distraught and upset. Detective Swanson obtained Ms. Walking Bull's statement and took immediate steps to create a state case in an attempt to locate appellant. Upon returning to her trailer home, the victim was apprehensive to enter due to her fear that appellant might have returned. Being afraid to enter the trailer, the victim urged McBride to call the police to check the premises. At approximately 3:00 a. m., Officer Mike Sines of the Pierre police department arrived and inspected the interior of the trailer to make sure appellant was not there. Officer Sines testified that the bed in the back bedroom appeared to have been slept in and that the general condition of the house was neat and clean.

Appellant pleaded an alibi defense. He maintained that at the time of the purported attempted rape, he was en route to Stephan, South Dakota, where he and his children spent the night with his sister, Thelma Grey Owl. Appellant testified that he arrived at the victim's trailer about 7:00 p. m., Friday, August 17, 1979, on his way to Bismarck to visit his children. Appellant testified that, at the victim's urging, he spent the night at her trailer. He left at approximately 6:00 a. m., the following morning, Saturday, August 18, 1979. Further, appellant testified that he returned to the victim's trailer with his two children that same evening at approximately 6:00 p. m. According to appellant, the victim wanted him to loan her money to enable her to purchase an automobile. Appellant refused to lend the victim any money. Appellant stated that he left the trailer and purchased some groceries about 7:00 p. m. He then visited two other nieces in Ft. Pierre. Appellant stated he returned with the groceries to the victim's trailer at approximately 9:00 p. m. Appellant stated that the victim continued to annoy him about borrowing money until appellant and his children finally left the trailer about 10:00 p. m.

Appellant testified that after stopping for gas in Pierre, he drove to Stephan, South Dakota, where he and his children spent the night with his sister. Stephan is approximately 46 miles from Pierre. Ms. Grey Owl testified that appellant arrived at her home at 11:00 p. m. the night of August 18, 1979, and spent the entire night there. According to appellant and his sister, both of them, together with their children, went to Pierre the following morning, Sunday, to attend a rummage sale and a picnic.

A few days later, Alexis Tiona, appellant's niece, called the victim on the telephone and asked if it was true that appellant was wanted for rape and incest. The victim replied that it was not true and that appellant had not tried to rape her. The victim testified at trial that she did, in fact, deny to Ms. Tiona that the incident between her and appellant had taken place. The victim's reason for the denial was that she did not want anyone else to know of the incident.

Appellant requested the trial court to instruct the jury on the effect of impeachment of a witness by a prior inconsistent statement. The requested instruction was refused. The jury found appellant guilty of the offenses charged and this appeal stems from that verdict.

## ISSUE

Did the trial court err in refusing appellant's requested instruction on impeachment of a witness by a prior inconsistent statement?

## DECISION

Appellant argues that the trial court committed reversible error by not granting his request for a jury instruction regarding the impeachment of the victim's testimony by a prior inconsistent statement. We agree. The evidence supporting appellant's conviction is based upon the testimony of the victim and others who observed the victim subsequent to the alleged attempted rape and incest. Aside from the victim's testimony and demeanor, evidence of the incident was circumstantial. The state's case depended almost entirely on the testimony of the victim.

Ms. Tiona testified at trial that the victim had told her a few days after the alleged incident that appellant had not tried to rape her. The victim herself testified that she had, in fact, made this statement to Ms. Tiona in an attempt to squelch any gossip over the incident. Despite this explanation, the fact remains that the state's prime witness made a prior inconsistent statement. Further, this inconsistency went to the heart of the state's case, i. e., the credibility of the victim.

Appellant requested South Dakota Pattern Jury Instruction, Vol. II, § 1–17–8, which provides:

The credibility of a witness may be attacked by introducing evidence that on some former occasion he made a statement on a matter of fact or acted in a manner inconsistent with his testimony in this case on a matter material to the issues. Evidence of this kind may be considered by you in connection with all other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness, but you must not consider any such prior statement as establishing the truth of any fact contained in that statement.

The request for this jury instruction was denied. Instead, the trial court perceived that South Dakota Pattern Jury Instruction, Vol. II, § 1–19 would suffice in regard to the issue of witness credibility. This instruction, which was given to the jury, provides:

You are the sole and exclusive judges of all quality of fact and the credibility of the witnesses and the weight to be given the testimony of each of them.

In determining the credit to be given any witness you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest bias or prejudice he may have and the reasonableness of his testimony considered in the light of all the evidence in the case.

This instruction does not entail a specific reference to witnesses who may have impeached themselves by making a prior inconsistent statement, but rather instructs the jury to take general notice of the credibility of all witnesses observed at trial.

A trial court must instruct a jury as warranted by the evidence presented. *Jahnig v. Coisman*, 283 N.W.2d 557 (S.D.1979); *Egan v. Sheffer*, 86 S.D. 684, 201 N.W.2d 174 (1972). There can be no doubt that there was sufficient evidence at trial to

grant the requested instruction regarding impeachment of the victim. When questioned about a conversation she had with the victim a few days subsequent to the alleged attempted rape, Ms. Tiona testified as follows:

A. I asked her, I said, I heard something and I want to know if it is true or not. And she said, well, what did you hear? And, so, I told her. And she said that it wasn't true.

Q. And what did you tell her?

A. I said that I heard the cops were looking for Uncle because he tried to rape you and they tried to get him for rape and incest. And she said, then, right away, she said, no, that ain't true. . . .

Further, the victim verified this testimony on cross-examination:

Q. (BY MR. ROBBENNOLT) Vicky, you don't deny, though, that you told Alexis the alleged incident didn't take place?

A. I don't deny it. I said, no. But its not very nice. I didn't want anybody else to know.

This testimony indicates the necessity of granting the request for an instruction regarding a prior inconsistent statement by the victim.

■ We recognize that it is not error to refuse to give jury instructions which are already embodied in other given instructions. *Jahnig v. Coisman*, supra; *Egan v. Sheffer*, supra; *Jorgenson v. Dronebarger*, 82 S.D. 213, 143 N.W.2d 869 (1966). Also, jury instructions are adequate when, considered as a whole, they give the full and correct statement of the law applicable to the case. *Mueller v. Mueller*, 88 S.D. 446, 221 N.W.2d 39 (1974); *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958). However, in light of the obvious inconsistent statements by the victim, and the crucial impact of her testimony, we hold that the trial court committed error in failing to give the requested instruction. The general instruction to the jury regarding their duty to judge and consider the credibility of every witness did not sufficiently focus attention on impeachment of the victim's inconsistent statements. Due to the significance of the victim's testimony, such a focus was imperative.

■ The burden is on appellant to show not only error but also prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if appellant's instruction had been given. *State v. Squirrel Coat*, 32 S.D. 569, 143 N.W. 958 (1913). When considering the testimony of a witness, the prime factor affecting the weight a jury will attach to the testimony is the witnesses' believability. In light of the victim's prior inconsistent statements, her testimony was a proper target for impeachment. Hence, the jury should have been properly instructed thereon. The requested jury instruction was vital in properly directing the jury's attention to a matter extremely material to the case. If the requested jury instruction on impeachment had been given, a different light could have been placed on the victim's testimony potentially strengthening the chances for appellant's acquittal. We conclude that the trial court's denial of appellant's request for South Dakota Jury Instruction, § 1–17–8 on a prior inconsistent statement was prejudicial error. Due to the dispositive nature of our holding on this particular issue, appellant's other contentions of error are rendered moot.

The judgment is reversed.

All the Justices concur.