STATE of South Dakota, Plaintiff
and Appellee,

v.

Blaine John BRINGS PLENTY,
Defendant and Appellant.

No. 17416.

Supreme Court of South Dakota.

Argued March 17, 1992.

Decided July 29, 1992.

convicted Brings Plenty of second-degree murder, for which he received life imprisonment. Brings Plenty appeals. The details of the assault on Janis are laid out extensively in *Brings Plenty I*, 459 N.W.2d at 392–94. Additional facts will be supplied where relevant to the discussion of the issues.

Mark Barnett, Atty. Gen., Frank E. Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

James F. Margadant of Sieler and Trimble, Rapid City, for defendant and appellant.

AMUNDSON, Justice.

Blaine John Brings Plenty (Brings Plenty) appeals from trial court's judgment of conviction for second-degree murder, and subsequent sentence to life imprisonment. We affirm.

## FACTS

The present appeal stems from an assault which was committed upon Chris Janis (Janis) during the early morning hours of January 10, 1988, in Rapid City, South Dakota. Janis died on January 14, 1988, as a result of extensive head injuries he sustained in the assault. Brings Plenty has appealed on two separate occasions to this court. The first appeal was an intermediate appeal brought jointly by Brings Plenty and his alleged accomplice in the assault, Robert Tapio (Tapio). The appeal involved State's disqualification of the trial judge and can be found in *State v. Tapio*, 432 N.W.2d 268 (S.D.1988). Brings Plenty was subsequently convicted by a jury of second-degree murder on February 20, 1989. He appealed the conviction, and this court reversed and remanded to the trial court for a new trial in *State v. Brings Plenty*, 459 N.W.2d 390 (S.D.1990) (hereinafter *Brings Plenty I*).

Brings Plenty was retried on the alternative charges of second-degree murder, or either of two counts of second-degree manslaughter. On December 13, 1990, the jury

## ISSUES

1. Whether trial court erred in admitting into evidence statements made by Vera Brings Plenty during an argument with her daughter under the excited utterance exception to the hearsay rule?

2. Whether trial court erred in admitting into evidence two boards found outside the trailer house based on its conclusion that State established a sufficient chain of custody?

3. Whether trial court erred in its conclusion that out-of-court statements made by Tapio were inadmissible under the declaration against penal interest exception to the hearsay rule?

4. Whether trial court erred in denying Brings Plenty's motion for acquittal at the close of all the evidence?

5. Whether trial court erred when it ruled there was not sufficient evidence to give the jury an additional instruction on eyewitness identification?

6. Whether trial court erred in instructing the jury on the theory of aiding and abetting?

### 1. *Excited Utterance*

Our standard of review for the evidentiary rulings of the trial court is well settled. As we stated in *State v. Pfaff*, 456 N.W.2d 558 (S.D.1990):

> For us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred. Once again, an abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.

*Id.* at 561 (citing *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987)). Brings Plen-

ty argues it was an abuse of discretion to admit certain statements made by Vera Brings Plenty (Vera) as excited utterances. SDCL 19–16–6 defines an excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, is not excluded by § 19–16–4, [Hearsay rule] even though the declarant is available as a witness."

One of the police officers testified that after Brings Plenty and Tapio were removed from the scene of the assault, she overheard an argument between Vera and her daughter Ollie Brings Plenty (Ollie). The statement at issue in this appeal, as testified to by the officer, is that during the argument Vera told Ollie that Tapio was angry because he thought Ollie and Janis were fooling around, and that Tapio and Brings Plenty had assaulted Janis. On appeal, Brings Plenty asserts that the startling event, which produced Vera's statements, was her argument with Ollie, not her observation of Janis' beating; thus, Vera's statements were not caused by the same event for which they were offered and were not therefore within the "excited utterance" exception to the hearsay rule.

We have previously held that excited utterances are admissible even if not strictly contemporaneous with the exciting cause. *State v. Bawdon*, 386 N.W.2d 484 (S.D. 1986); *State v. Percy*, 80 S.D. 1, 117 N.W.2d 99 (1962). As stated in *Percy*, "the critical inquiry is whether they [the declarations] were made while declarant was still under the influence of the experience." 80 S.D. at 7, 117 N.W.2d at 102. There is no established test as to the length of time that can elapse between the event and the utterance. *Id.* Instead, we have held that each case must be determined from the circumstances surrounding the utterance. *Id.*

Our review of the record reveals that when officers arrived at the scene, Vera was excited and screaming. The officers on the scene testified that Vera was still excited and upset when she indicated to them that Brings Plenty and Tapio were involved in the assault. Brings Plenty did not raise any objection to this particular statement by Vera. The dispatcher on duty the evening of the assault testified that Vera was excited and upset when she called for help. Dispatcher testified that Vera screamed several times "they are killing him" and named Brings Plenty and Tapio. Brings Plenty did not raise any objection to Vera's statements given to the dispatcher.

■ From the evidence in the record, it is amply clear Vera was excited and upset throughout the entire chain of events surrounding the assaults on Janis, and made numerous statements throughout the evening which incriminated Brings Plenty. The only incriminating statement which received an objection was Vera's statement to Ollie that because Ollie flirted with Janis, *Tapio* got angry, and Tapio and Brings Plenty assaulted Janis. Even if trial court erred in admitting this statement, we fail to see how it could have prejudiced Brings Plenty because the statement tends to show Tapio as the aggressor in the assault, not Brings Plenty, and could therefore benefit his defense.

■ The evidence shows the statement in question related directly to the circumstances of the assault on Janis, in that it demonstrated that Ollie's flirtatious demeanor might have sparked Tapio's aggression. The statement in question was consistent and merely cumulative with all the other statements made by Vera while she was still under the influence of the events observed during this carnage. Thus, there was ample evidence from which trial court could have reasonably concluded Vera's statements were excited utterances. We therefore hold that trial court did not abuse its discretion in applying the excited utterance exception to Vera's statements.

2. *Chain of Custody*

■ A trial court's decision to admit real or tangible evidence over objection will only be reversed where there is a clear abuse of discretion. *State v. Lohnes*, 432 N.W.2d 77 (S.D.1988); *State v. Herman*, 253 N.W.2d 454 (S.D.1977). This standard

also applies with regard to the competency of chain of custody evidence. *State v. Wimberly,* 467 N.W.2d 499 (S.D.1991); *State v. Miller,* 429 N.W.2d 26 (S.D.1988). The trial court has great discretion in regard to the competency of chain of custody evidence. *Miller,* 429 N.W.2d at 38. As we stated in *Wimberly:*

> Where the offered object is not readily identifiable or distinguishable, or is susceptible to alteration by mistake in substitution, tampering or contamination, a proper foundation requires testimony tracing the chain of custody of the object with sufficient completeness to render it improbable that the original item has been so altered.

467 N.W.2d at 503 (citations omitted).

On appeal, Brings Plenty maintains that State failed to establish a sufficient chain of custody for two boards seized outside Vera's residence to show that the boards were in substantially the same condition at trial as they were the evening of the assault. Specifically, he alleges the boards were placed together without sufficient determination of their condition and could therefore have been contaminated.

■ The evidence in the record regarding State's chain of custody for the boards reveals that Officer Nelson, one of the first officers on the scene, observed a board lying against Janis' body. This board was later seized by Officer Lynde, who was given another board by Officer Anderson, which had been found in an area near the front steps of Vera's residence.

The record shows Officer Lynde placed these two boards in the trunk of his patrol car, one on top of the other. The record further shows that the boards remained in the trunk of his car until they were removed several hours later and placed in an evidence locker. There is testimony in the record from an FBI agent who conducted tests on both boards that hair samples taken from one of the boards matched Janis', while the hair sample from the other board did not; thus, it appeared unlikely to him that the hairs transferred from one board to the other, since the hairs did not match.

■ We have previously determined in chain of custody questions, that the State need not negate every possibility of tampering or substitution, but must demonstrate with reasonable probability that no tampering or substitution has occurred. *Wimberly,* 467 N.W.2d at 503, *Miller,* 429 N.W.2d at 39. "Mere speculation is insufficient to establish a break in a chain of custody." *Miller, Id.* Based on the evidence supporting State's chain of custody, and Brings Plenty's assertion the boards might have been contaminated we think trial court correctly concluded it was improbable and speculative that the boards had been altered. *Wimberly, supra; Miller, supra.* We therefore affirm trial court's admission of the boards seized outside Vera's residence.

### 3. *Declaration Against Penal Interest*

■ As with other evidentiary rulings, our standard of review for trial court's decision to admit or exclude a statement against penal interest is whether the trial court abused its discretion. *United States v. Poland,* 659 F.2d 884 (9th Cir.1981); *United States v. Satterfield,* 572 F.2d 687 (9th Cir.1978), *cert. denied* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138.

The statements in question were allegedly made by Tapio to three other penitentiary inmates. Outside the presence of the jury, Brings Plenty called Tapio as a witness, but Tapio invoked his Fifth Amendment privilege against self-incrimination and refused to testify. The trial court accordingly found Tapio was unavailable to testify.

Brings Plenty subsequently sought to introduce the out-of-court statements through each of the three inmates at trial. The first inmate stated he could not recall any of Tapio's statements, and the second, Austin Black Elk (Black Elk), refused to testify and was declared unavailable, although his redacted statement was later read into evidence. The third inmate, David Red Star (Red Star), is Brings Plenty's step-brother, and he was examined outside the presence of the jury. The statements which Red Star testified to were that

Tapio told him "with the way [Brings Plenty] was drinking, he [Tapio] was probably the only one that knows what happened that night," and that "this wouldn't have happened if Ollie never brought him [Janis] over." Red Star also said Tapio had indicated that he could have killed for Ollie when he was with her, but not anymore.

Trial court heard this testimony and ruled the statements were inadmissible hearsay. Brings Plenty argues the statements qualify as statements against penal interest as defined by SDCL 19–16–32, which provides:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true, is not excluded by § 19–16–4 if the declarant is unavailable as a witness. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

■ A party seeking to admit statements under this exception to the hearsay rule must prove (1) the declarant is unavailable, (2) the statement so far tends to subject the declarant to criminal liability that a reasonable person would not have made the statement unless he believed it to be true, and (3) the statement is corroborated by circumstances clearly indicating its trustworthiness. *United States v. Layton*, 720 F.2d 548, 559 (9th Cir.1983) *cert. denied* 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748; *United States v. Riley*, 657 F.2d 1377, 1383 (8th Cir.1981) *cert. denied*, 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962.

■ It is clear Tapio was unavailable, thus the first part of the test was met. The statements to Red Star, however, constitute nothing more than an admission that Tapio participated in the assault on Janis which Tapio had previously admitted at his own trial. *State v. Tapio*, 459 N.W.2d 406, 409 (S.D.1990). Thus it does not tend to incriminate him any more than he already incriminated himself, and accordingly fails the second part of the test.

■ We further think it significant that although Red Star's testimony was excluded, Brings Plenty was allowed to admit Black Elk's redacted statement which included an admission by Tapio that he was the one who "made the gaping hole in the victim's head." Black Elk gave the most incriminating statement of the three inmates, and the admission of Red Star's statement would merely have provided cumulative evidence to Black Elk's statement. Therefore, even if trial court were found to have erred in excluding Red Star's testimony, it would not be prejudicial when similar, more incriminating, evidence from Black Elk had been admitted. *State v. Myers*, 88 S.D. 378, 220 N.W.2d 535 (1974). We therefore affirm trial court's exclusion of Red Star's testimony.

### 4. *Sufficiency of Evidence*

■ Brings Plenty argues there is insufficient evidence to support his conviction for second-degree murder. Our scope of review for this type of challenge is well settled. We must determine whether there is evidence in the record which is sufficient to sustain a finding of guilt beyond a reasonable doubt and, to make this determination, we accept the evidence and the most favorable inferences fairly drawn therefrom which will support the verdict. *State v. Olson*, 449 N.W.2d 251 (S.D.1989); *Miller*, 429 N.W.2d at 38.

Brings Plenty argues there was conflicting evidence presented in the case, and that substantial evidence existed which supported a finding of reasonable doubt. We have previously held that it is the function of the jury to resolve evidentiary conflicts, determine the credibility of the witnesses, and weigh the evidence. *State v. Battest*, 295 N.W.2d 739, 742 (S.D.1980). As such, we afford the strongest presumption in favor of the jury's conclusions.

■ While there was some conflicting evidence, and inconsistencies existed in

some of the witnesses' testimony, the jury heard all the evidence and resolved any conflicts in the evidence in favor of the State. Our review of the record reveals more than sufficient evidence to sustain the jury's finding of Brings Plenty's guilt beyond a reasonable doubt. Accordingly, Brings Plenty's conviction is affirmed.

### 5. *Eyewitness Identification*

The giving of jury instructions on identification rests largely within the trial court's discretion. *United States v. Collins,* 559 F.2d 561, 566 (9th Cir.1977), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195. It is well established that an identification instruction is not mandated in all eyewitness cases. *United States v. Greene,* 591 F.2d 471, 475 (8th Cir.1979); *United States v. Dodge,* 538 F.2d 770 (8th Cir.1976) *cert. denied* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 547. In order to determine whether the identification instruction should have been given, we review whether the eyewitness testimony is essential to support a conviction. *Greene,* 591 F.2d at 475; *Dodge,* 538 F.2d at 784. When the eyewitness identification is the sole basis for the conviction, there is the possibility of misidentification, and the trial court did not instruct on the crucial role the eyewitness identification played in the case, then a reversible error has been committed. *Greene,* 591 F.2d at 477.

Brings Plenty argues that Lori Brings Plenty (Lori), his niece, was advanced by State as the sole reliable eyewitness in this case and she later contradicted her statements and they were not corroborated by other evidence. In this case, however, we cannot say the eyewitness identification by Lori was the sole basis for Brings Plenty's conviction. As we stated above, there is more than sufficient evidence from which to sustain Brings Plenty's conviction. The record shows Vera identified Brings Plenty as one of the perpetrators of the assault. Further, blood and hair consistent with Janis' and found on Brings Plenty's clothing, along with other physical evidence, would support Brings Plenty's conviction. Additionally, this is not a case

where a perpetrator was identified by complete strangers. The eyewitnesses to Brings Plenty's actions were his niece and his mother, thus, it would appear unlikely they would make a mistaken eyewitness identification of someone with whom they lived and were related. The record reveals there was evidence which strongly corroborated Lori's statement and, as such, no prejudicial error occurred in refusing to give the proffered instruction. *United States v. Cain,* 616 F.2d 1056, 1058–59 (8th Cir.1980). We hold trial court did not err in refusing to give the eyewitness identification instruction.

### 6. *Aiding and Abetting*

Brings Plenty argues that trial court erred in instructing the jury that he could be found guilty if it was determined that he aided and abetted in Janis' murder. Brings Plenty asserts that the evidence does not support a finding that he was anything more than a passive bystander. We disagree.

SDCL 22–3–3 provides: "Any person who, with the intent to promote or facilitate the commission of a crime, aids, abets or advises another person in planning or committing the crime, is legally accountable, as a principal to the crime."

Brings Plenty contends he was only involved in the initial fist fight with Janis, and Janis only sustained minor injuries as a result. This argument was discussed in *Tapio,* 459 N.W.2d at 409, wherein we held that even if this were the case, Brings Plenty could still be guilty as an aider and abettor. In *Tapio,* we concluded that even if there was a break in the altercation when Tapio and Brings Plenty left Janis to stop Cameron Red Star from calling the police, when they dragged Janis out of the trailer in his weakened condition, the elements necessary for aiding and abetting were present. 459 N.W.2d at 409.

We have previously held that a party's presence at the scene of the crime is one circumstance which tends to support a finding that he was a participant which, along with all other circumstantial evidence, can establish his guilt as an aider and abettor.

*State v. Ashker,* 412 N.W.2d 97 (S.D.1987). "When the evidence indicates that the defendant was more than a passive bystander and knowingly did something to assist in the commission of a crime, then his status changes." *State v. Schafer,* 297 N.W.2d 473, 476 (S.D.1980).

After all the evidence has been presented, it is trial court's duty to instruct the jury as the evidence warrants. *State v. Curtis,* 298 N.W.2d 807 (S.D.1980); *State v. Grey Owl,* 295 N.W.2d 748 (S.D.1980). Our review of the record reveals there is more than sufficient evidence to support trial court's determination that Brings Plenty was present, and more than a passive bystander in the assault on Janis. The testimonial evidence of Vera, Lori, and the police officers, the physical evidence including blood and hair consistent with Janis' found on Brings Plenty's clothing, and Brings Plenty's own statements, all support trial court's instruction. Thus, Brings Plenty's presence at the scene of the assault, coupled with the testimonial and physical evidence and his conduct after the offense, warranted trial court's instruction on aiding and abetting. *Curtis, supra; Grey Owl, supra.*

Brings Plenty also asserts the evidence did not warrant a finding of the jury that he "knowingly did something to assist in the commission of a crime." Under SDCL 22-3-3, in order to be convicted as an aider and abettor, the evidence must prove beyond a reasonable doubt that a person acted with intent to promote or facilitate the commission of a crime, by aiding, abetting or advising another person in planning or committing the crime alleged to have been committed.

The trial court instructed the jury that the defendant Brings Plenty had to have "the specific intent" to promote or facilitate the beating of Janis. This instruction obviously placed a more onerous burden of proof on the State than merely having to show that Brings Plenty knowingly acted, because knowingly does not encompass a specific intent or special mental state over and above a doing of the actual act. *State v. Barrientos,* 444 N.W.2d 374, 376 (S.D.1989). Thus, the instruction did not prejudice Brings Plenty in any way, since it actually placed a heavier burden upon State in proving its case and therefore benefitted his defense.

Since the record reflects that Brings Plenty requested that the specific intent element be incorporated into the jury instructions on aiding and abetting, it is incongruous to now claim a lack of evidence to prove mere knowledge. This is especially so in consideration of the jury holding on the specific intent element as required in the court's instructions. We have previously stated:

> Our review requires that we accept the evidence and the inferences that the jury may have drawn therefrom in support of the verdict. The jury's verdict will not be set aside if the evidence and the reasonable inferences drawn therefrom sustain a rational theory of guilt.

*State v. Bachman,* 446 N.W.2d 271, 273–74 (S.D.1989) (citations omitted). The evidence and the inferences that can be readily drawn from the facts set forth herein support and provide a rational basis for the guilty verdict of the jury.

Based on our holding that there was more than sufficient evidence to support the trial court's giving of the instructions on aiding and abetting, we affirm the trial court on all issues raised herein.

MILLER, C.J., and HENDERSON and SABERS, JJ., concur.

WUEST, J., concurs specially.

WUEST, Justice (concurring specially).

I concur with the majority opinion. The majority writing on "excited utterances" is in accordance with my dissent in *State v. Devall,* 489 N.W.2d 371, 381 (S.D.1992). I believe the majority opinion in this case is inconsistent with Devall as to "excited utterances."