#24203-rev&rem-PER CURIAM
**2007 SD 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,          Plaintiff and Appellee,

    v.

JAMES MARVIN LINDNER,          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOSEPH NEILES
Judge

* * * *

LAWRENCE E. LONG
Attorney General

KATIE L. HANSEN
Assistant Attorney General         Attorneys for plaintiff
Pierre, South Dakota         and appellee.

MICHAEL G. MILLER
Minnehaha County Public Defender        Attorneys for defendant
Sioux Falls, South Dakota        and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 23, 2007

OPINION FILED 6/27/07

#24203
PER CURIAM

[¶1.] James Lindner (Lindner) appeals his conviction for possession of a controlled substance and possession of marijuana contending the trial court erred in denying the admission of proffered testimony. We reverse and remand.

FACTS

[¶2.] On September 30, 2005, Lindner and Daniel Stricherz (Stricherz) went to a Wal-Mart store in Sioux Falls, South Dakota. Stricherz remained in the vehicle while Lindner went inside. Lindner met his stepson, Michael Richards (Richards), at the front of the store. Stricherz testified that the two got into an argument but Stricherz could not hear what was being said. Stricherz testified that Lindner yelled at Richards and took something from him and put it into his pocket. Lindner returned to the car and the two left.

[¶3.] At this point Lindner and Stricherz went to Lindner's sister's house for a few minutes to see if she wanted to go with them to play bingo for their father's birthday. They left without her and went to play bingo at about 6:00 p.m. They played until approximately 10-10:30 p.m. After bingo they went to a casino in Sioux Falls. At approximately 2:30 a.m. law enforcement stopped Lindner's vehicle for a nonworking headlight, brake light and license plate light.

[¶4.] Lindner did not have his driver's license or proof of insurance and was asked to step out of the vehicle. Lindner consented to a pat down search. The officer found a slender object in a front pocket that Lindner indicated was his work pen. When asked to remove the item, Lindner attempted to switch it into his other hand before the officer could see what it was and acted as though he could not find

-1-

the object. The officer grabbed Lindner and Lindner threw the object, which was a glass pipe, to the ground. After he was placed under arrest Lindner indicated he had more contraband in his pocket. The officer found a small plastic bag with marijuana and a pipe. A field test indicated that the pipe that was thrown to the ground contained methamphetamine residue. Lindner indicated to the officer these items belonged to his stepson, Richards.[1]

[¶5.]		Lindner was charged with possession of a controlled drug or substance (methamphetamine), possession of marijuana and possession of drug paraphernalia. On the morning of trial, Lindner asked the trial court to grant Richards immunity if he testified because the State had refused to grant immunity. The trial court denied the request and appointed Richards an attorney to advise him of his rights because he was going to be called as a witness in the proceeding. During trial, from opening statement to closing argument, defense counsel argued that Lindner took the items away from his stepson. Richards was called as a witness at the trial. Richards invoked his Fifth Amendment privilege against self-incrimination in response to defense questions about the occurrence at Wal-Mart.[2]

[¶6.]		Richards was excused as a witness and a conference between counsel and the judge was held concerning the next witness. The jury was removed from the courtroom and the following exchange took place:

---

1.	The officer testified a UA was not conducted on Lindner following his arrest.

2.	Lindner did not testify at trial. The defendant's case consisted of his parents' testimony that he did play bingo for his father's birthday that evening along with Stricherz. Stricherz then testified as to what he observed at Wal-Mart. Richards was called and asked about that incident which resulted in the invocation of his Fifth Amendment privilege.

Defense counsel: At this point I would intend to call a paralegal from my office to testify under 804(a)(1). I believe this witness asserting his right to Fifth Amendment, that makes him an unavailable witness. And I would intend to call the paralegal to testify as to what he told her during their interview.

The Court: [State], what's the---

State: Judge, the state is objecting, I guess, on a couple of grounds. One, the fact of the matter is the paralegal coming and testifying, the state is not going to be able to adequately cross-examine her. The witness in this particular case did come, did take the stand, exercised that Fifth Amendment right. And I believe based on that I have no—I have no means of adequately cross-examining a witness who is not the person who made statements.

The Court: Well, I don't think that we read 804(a)(1) all by itself. We have to look at the other statutes as well. And specifically Rule 804(b)(6), and as it's codified in SDCL 19-16-35, which is the statute that deals with other hearsay being admissible if the declarant is unavailable. That statute requires there be advanced notice by the proponent to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it.

[Defense counsel], did you give notice to [State] before the trial that you anticipated that you might be needing to call the paralegal to testify as to these interviews that you had?

Defense counsel: I did not, Your Honor.

The Court: And that notice includes or is supposed to include your intent to offer the statement and the particulars of it, including the name and the address of the declarant. It also requires that the court has to do a weighing as to whether the statement is offered as a material fact; whether the statement is more probative on the point for which it is offered than any other evidence which the proponents can procure through reasonable efforts; and the general purpose of these rules and the interests of justice will best be served by admission of the statement into evidence.

> And it also has to have equivalent circumstantial guarantees of trustworthiness consistent with the statutes as set forth in Sections 19-16-30 to 19-16-34. Those statutes deal with former testimony which would be testimony under oath, dying declarations, admissions against interest, statements about personal or family history and decedent's statements. I suppose that it's possible—and I don't know what that testimony is at this point—but I suppose it's possible that *it might be in the nature of admissions against interest. I anticipate that's what that testimony would be, so under those circumstances it might arguably have that circumstantial guarantee of trustworthiness. But absent advance notice to state, I don't think I can allow that testimony.*
>
> Defense counsel: Thank you, Judge.
>
> Court: Any further record you wish to make with respect to that testimony, [defense counsel]?
>
> Defense counsel: I don't judge. I would let the court know that I don't have any other witnesses then.

(Emphasis added.) Lindner was convicted for possession of methamphetamine and marijuana and acquitted on the paraphernalia charge. The trial court only imposed sentence for methamphetamine possession. Lindner received a suspended sentence and 180 days in the county jail based on the trial court's sentencing statement that this was essentially a "residue-type" case. Lindner appeals contending the trial court's decision denying the testimony was an abuse of discretion.

## ANALYSIS

[¶7.]     We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. State v. Mattson, 2005 SD 71, ¶13, 698 NW2d 538, 544. "With regard to the rules of evidence, abuse of discretion occurs when a trial court misapplies a rule of evidence, not when it merely allows or refuses questionable evidence." State v. Asmussen, 2006 SD 37, ¶13, 713 NW2d 580, 586.

Here, the trial court abused its discretion in determining advance notice of the statement was required for a statement against interest under SDCL 19-16-32 (Rule 804(b)(3)). In analyzing the admissibility of the statement, the trial court first considered its admissibility under SDCL 19-16-35 (Rule 804(b)(6))(catch-all provision), which requires advance notice. SDCL 19-16-35 provides:

> *A statement not specifically covered by any of §§ 19-16-30 to 19-16-34, inclusive,* but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19-16-4 if the declarant is unavailable as a witness and if the court determines that
>
> (1)    the statement is offered as evidence of a material fact;
> (2)    the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
> (3)    the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
>
> However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

SDCL 19-16-35 (emphasis added). However, although this catch-all hearsay exception contains an advance notice requirement, that notice requirement does not apply to the firmly rooted exceptions to the hearsay rule found in SDCL 19-16-30 thru 19-16-34.

[¶8.]       Therefore, Lindner contends that the trial court erred in ruling that the statement was also excluded under SDCL 19-16-32 (admissions against interest). That statute provides:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true, is not excluded by § 19-16-4 if the declarant is unavailable as a witness. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

SDCL 19-16-32. "A party seeking to admit statements under this exception to the hearsay rule must prove (1) the declarant is unavailable, (2) the statement so far tends to subject the declarant to criminal liability that a reasonable person would not have made the statement unless he believed it to be true, and (3) the statement is corroborated by circumstances clearly indicating its trustworthiness." State v. Brings Plenty, 490 NW2d 261, 266 (SD 1992)(citations omitted). As the trial court recognized and defense counsel indicated, the witness was being called to testify as to what Richards stated when she interviewed him about the encounter at Wal-Mart.[3] Richards previously invoked his Fifth Amendment privilege against self-incrimination concerning the encounter and was therefore unavailable to testify. See SDCL 19-16-29 (Rule 804(a))("Unavailability as a witness includes situations in which the declarant is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement."); Brings Plenty, 490

---

3. In State v. Crawford, 2007 SD 20, ¶ 10, 729 NW2d 346, 348, this Court examined a situation where a paralegal was also called to testify to statements made during an interview after the declarant invoked his Fifth Amendment privilege against self-incrimination. The trial court allowed some of the statements under SDCL 19-16-32 and excluded others and we affirmed the trial court's evidentiary rulings. Id. ¶ 22.

NW2d at 266 (declarant's exercise of his Fifth Amendment privilege makes him unavailable under SDCL 19-16-32).[4] The trial court did not further analyze the admissibility of the witness' testimony and relied only on the lack of notice to the State in excluding the testimony; a requirement that does not exist for admission under SDCL 19-16-32. This was an error of application amounting to an abuse of discretion.

[¶9.]        As the trial court indicated in its ruling before invoking the notice requirement, a statement by Richards that he possessed drugs and paraphernalia would subject him to criminal liability as it is against his interest. The jury was also presented with evidence that Stricherz observed a verbal altercation with Lindner and Richards and that Lindner took something away from Richards. The evidence further indicated Lindner immediately informed law enforcement the items belonged to Richards when he was arrested. On remand, the trial court should apply the test set forth in *Brings Plenty* to this evidence and the proffered statement in order to determine its admissibility, an inquiry that was bypassed by the errant notice requirement.[5]

---

4.      "The Rule requires not the unavailability of the declarant but the unavailability of the declarant's testimony. There is a difference. The declarant's presence on the witness stand will not block use of his or her extra-judicial statement if the declarant refuses to answer [or] exercises a privilege not to answer[.]" Weinstein's Federal Evidence, Vol. 5, § 804.03[1] (2006). The exercise of the privilege against self-incrimination creates such unavailability. *Weinstein's,* § 804.03[2] n5.

5.      "The corroboration requirement of this rule is a preliminary determination as to the statement's admissibility, not an ultimate determination about the statement's truth." *Weinstein's*, § 804.06[5][b][i]. "The corroboration requirement should not be used as a means of usurping the jury's function." *Weinstein's*, § 804.05[b][iii]. "Evidence that the declarant was near the scene and had some motive or background connecting him with the crime should be

#24203

[¶10.]    Finally, the State argues that even if the defense theory of the case is true a parent taking drugs away from a child has no defense to a conviction and the fact Lindner did not dispose of the drugs immediately evidences his criminal intent. In order to support a conviction, the State was required to establish the possession was "knowing." *See* SDCL 22-42-5; 6 ("No person may knowingly possess . . ." ). In light of our decision to reverse and remand we do not address this contention other than to note that this is a question left to the jury to determine, especially considering the fact that Lindner was convicted for possession of methamphetamine based on residue in a pipe.

[¶11.]    Reversed and remanded.

[¶12.]    GILBERTSON, Chief Justice, SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.

---

sufficient corroboration." *Id*. To aid in the corroboration analysis, we note that the Eighth Circuit Court of Appeals has articulated the following factors:

> (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, (2) the general character of the speaker, (3) whether other people heard the out-of-court statement, (4) whether the statement was made spontaneously, (5) the timing of the declaration and the relationship between the speaker and the witness.

United States v. Bobo, 994 F2d 524, 528 (8thCir 1993) (citing United States v. Rasmussen, 790 F2d 55, 56 (8thCir 1986)).